173 So. 742

**HICKMAN et al. v. PAN–AMERICAN LIFE INS. CO.**

· No. 34016.

March 1, 1937.

Rehearing Denied March 29, 1937.

Hawthorn, Stafford & Pitts, of Alexandria, for appellant.

Hunter & Neilson, of Alexandria, for appellees.

O'NIELL, Chief Justice.

The question in this case is whether, under a life insurance policy providing for a total disability benefit and requiring that proof of any such disability shall be furnished before default in the payment of a subsequent premium, a failure to give the notice before default in the payment of the premium is excusable when insanity is the cause of the disability and of the failure to give the notice. The judge of the district court decided in favor of the insured. He is an interdict, confined in a state hospital for the insane, and is represented in this suit by his wife, as curatrix. The insurance company has appealed from the decision.

This is the first time the question has been put to this court. In some jurisdictions the courts have decided the question one way, and in other jurisdictions they have decided it the other way. In the case of the Mutual Life Insurance Company v. Johnson, 293 U.S. 335-340, 55 S. Ct. 154, 156, 79 L.Ed. 398, the Supreme Court of the United States gave the line-up of the decisions on each side of the question, and said, "without suggesting an independent preference either one way or the other," that the court would follow the law of the state in which the insurance policy was delivered to the insured and in which the insured resided. The District Court of the United States for the Western District of Virginia upheld the insurance company's contention, that the insanity of the insured did not excuse his failure to furnish proof of his disability, so as to give him the benefit of the stipulation waiving premiums falling due during the disability; hence the court directed a verdict for the insurance company. The Court of Appeals for the Fourth Circuit reversed the ruling and remanded the case for trial. 70 F.(2d) 41. The Supreme Court affirmed the judgment of the Court of Appeals, following the decision of the Supreme Court of Virginia in Swann v. Atlantic Life Insurance Co., 156 Va. 852, 159 S.E. 192. The Supreme Court of the United States cited the following additional opinions supporting the ruling of the Circuit Court of Appeals, viz.: Rhyne v. Jefferson Standard Life Insurance Co., 196 N.C. 717, 147 S.E. 6; Id., 199 N.C. 419, 154 S.E. 749; Levan v. Metropolitan Life Insurance Co., 138 S.C. 253, 136 S.E. 304; Pfeiffer v. Missouri State Life Insurance Co., 174 Ark. 783, 297 S.W. 847, 54 A.L. R. 600; Reed v. Loyal Protective Association, 154 Mich. 161, 117 N.W. 600; Marti v. Midwest Life Insurance Co., 108 Neb. 845, 189 N.W. 388, 29 A.L.R. 1507; Roseberry v. American Benevolent Ass'n, 142 Mo.App. 552, 121 S.W. 785; Metropolitan Life Insurance Co. v. Carroll, 209 Ky. 522, 273 S.W. 54; Comstock v. Fraternal Accident Association, 116 Wis. 382, 93 N.W. 22; Missouri State Life Insurance Co. v. Le Fevre (Tex.Civ.App.) 10 S.W.(2d) 267. Cf. Trippe v. Provident Fund Society, 140 N.Y. 23, 35 N.E. 316, 22 L.R.A. 432, 37 Am.St.Rep. 529; Insurance Companies v. Boykin, 12 Wall. 433, 436, 20 L.Ed. 442, 443; American Law Institute's Restatement of the Law of Contracts, No. 301, Illustration 4. And the Supreme Court of the United States gave the following list of decisions supporting the insurance company's interpretation of the contract, viz.:

New England Mutual Life Insurance Co. v. Reynolds, 217 Ala. 307, 116 So. 151, 59 A.L.R. 1075; Iannarelli v. Kansas City Life Insurance Co., 114 W.Va. 88, 171 S.E. 748; Smith v. Missouri State Life Insurance Co., 134 Kan. 426, 7 P.(2d) 65; Berry v. Lamar Life Insurance Co., 165 Miss. 405, 142 So. 445, 145 So. 887; Western & Southern Life Insurance Co. v. Smith, 41 Ohio App. 197, 180 N.E. 749; Reynolds v. Travelers' Insurance Co., 176 Wash. 36, 28 P.(2d) 310; Dean v. Northwestern Mutual Life Insurance Co., 175 Ga. 321, 165 S.E. 235; Hall v. Acacia Mutual Life Association, 164 Tenn. 93, 46 S.W.(2d) 56; Egan v. New York Life Insurance Co. (C.C.A.5th) 67 F.(2d) 899. Cf. Courson v. New York Life Insurance Co., 295 Pa. 518, 145 A. 530; Whiteside v. North American Accident Insurance Co., 200 N.Y. 320, 93 N.E. 948, 35 L.R.A.(N.S.) 696.

The insurance company quotes from Bergholm v. Peoria Life Insurance Co., 284 U.S. 489, 52 S.Ct. 230, 76 L.Ed. 416, an excerpt which was quoted by the Supreme Court of Mississippi as supporting the decision in Berry v. Lamar Life Insurance Company, 165 Miss. 405, 142 So. 445, 145 So. 887, 889, viz.:

"Here the obligation of the company does not rest upon the existence of the disability; but it is the receipt by the company of *proof* of the disability which is definitely made a condition precedent to an assumption by it of payment of the premiums *becoming due after the receipt of such proof*. The provision to that effect is wholly free from the ambiguity which the court thought existed in the Marshall policy. [Minnesota Mutual Life Insurance Co. v. Marshall (C.C.A.8th) 29 F.(2d) 977]."

In the Bergholm Case it does not appear to have been contended that insanity was the cause of the failure of the insured to pay the premium. For that reason it was said in Mutual Life Insurance Co. v. Johnson, supra, that the decision in the Bergholm Case did not support the argument for the Mutual Life Insurance Company, thus:

"Bergholm v. Peoria L. Ins. Co., 284 U.S. 489, 52 S.Ct. 230, 76 L.Ed. 416, is not apposite; there being no evidence in that case of incapacity, physical or mental, to give the prescribed notice."

█ The doctrine of the Bergholm Case is simply this: That the provision in a life insurance policy that, upon receipt by the insurer of satisfactory proof that the insured is totally and permanently disabled, he will be exempted from the payment of premiums thereafter during the continuance of the disability, does not save the policy from lapsing by reason of the nonpayment of a premium falling due at a time when the disability existed unless proof thereof was furnished to the insurer. That general rule was approved by this court in Compton v. Amicable Life Insurance Co., 182 La. 991, 162 So. 751, 105 A.L.R. 1087. But the doctrine that, if insanity is the cause of the disability and of the failure to pay a premium falling due during the disability, the policy shall not lapse because of the non-payment of the premium, is an exception to the general rule, which otherwise enforces rigorously

the stipulation that all premiums must be paid on or before the day stipulated.

There is no good reason why we should analyze the conflicting opinions on this question. The courts that maintain that insanity is not an excuse for a failure of a policyholder to pay a premium falling due during such disability adhere to the letter of the contract, and maintain that such an excuse cannot avail the policyholder if it is not so stipulated in the policy. The courts that hold the other way say that the parties entering into a contract of insurance providing for a total disability benefit, and requiring proof thereof to be furnished by the insured to the insurer before default in the payment of a premium, do not contemplate that the cause of the disability may be insanity, and may therefore make it utterly impossible to give the notice within the period stipulated; hence these courts maintain that it goes without saying that one of the parties to such a contract shall not be obliged to do something which providence alone has made impossible. That is the opinion of a majority of the courts; and we have decided to approve and adopt it. In the editorial note in 54 A.L.R. 611, referring to the case of Pfeiffer v. Missouri State Life Insurance Co., 174 Ark. 783, 297 S. W. 847, it is said:

"The overwhelming weight of authority is to the effect that the insured, in policies requiring notice of the accident or disability within a stipulated time after the occurrence thereof, is excused for his failure to give such notice within the stipulated period if he is prevented from so doing by reason of mental incapacity resulting from the accident or disability, provided such notice is given a reasonable time after recovering his mental faculties."

In this case it appears that no one but the insured knew anything about his insurance policies until his wife found them, soon after he was interdicted. She immediately turned them over to a lawyer, and he immediately notified the insurance company of the disability of the insured.

In the American Law Institute's Restatement of the Law of Contracts, No. 301, giving instances where an impossibility that would discharge the duty to perform a promise excuses a condition, the fourth "Illustration" given is this:

"4. A, an insurance company, insures the life of B for the benefit of B's wife, C. The policy contains a condition that default in the payment of premiums is excusable if notification is sent by the insured before making default. B becomes insane and makes default in paying a premium. Being insane, he gives no previous notification of the non-payment. Within the period of grace allowed by the terms of the policy if he had sent notification, he dies. A is bound to pay the policy, the condition being excused because of impossibility."

The insurance company in this case pleaded that the plaintiff's petition did not disclose a cause or right of action. The district judge, in overruling the plea, rendered a very convincing opinion on the subject. The plea is insisted upon yet. It is argued that the plaintiff, executrix, in a certain paragraph of her petition, admitted that the two policies of insurance on

which the suit is founded became extended insurance, for a period which expired after this suit was filed. These allegations would be, virtually, a denial of a right of action if they stood alone. But, when all of the allegations of the petition are given effect, it is made plain enough that the plaintiff claims, primarily, that because insanity was the cause of the disability of the insured, and of his failure to give the insurer notice of the disability, the policy did not lapse for nonpayment of the premium falling due during the disability; and, in the alternative, that, if the insanity was not an excuse for the default in the payment of the premium falling due during the insanity, the insurance became extended insurance, with the benefit of the disability clause, extending beyond the time when the notice of the disability was given. We are not much impressed with this alternative proposition, but we find it unnecessary to give it further consideration, because the insanity plea is well founded.

■ The insurance company denies that the insured was "completely insane" before he defaulted on the payment of a premium, and denies that he was mentally or physically disabled or prevented "from pursuing any and all gainful occupations"—as provided in the policies of insurance. The evidence, however, leaves no doubt that the insanity, with which the insured was afflicted before and at the time of the default on the payment of a premium, produced total and permanent disability, preventing the insured from pursuing any gainful occupation, and preventing his furnishing proof or giving notice of his disability.

The form of insanity was paresis. Its existence was discovered by attending physicians nearly a year before the insured defaulted on the payment of a premium on his policies. The two policies were of the same date, March 18, 1918; and the premiums were payable annually on the same day of the year. It is said in the briefs that the default on the premium payment occurred on November 1, 1933. According to the policies it seems that the premium was payable on the 18th of March. That is a matter of no importance because the ailment of the insured was diagnosed as paresis in the latter part of 1932. He was admitted to the insane asylum on the 13th of February, 1933, without being interdicted. He was subjected then to the most approved tests and diagnosis, by the assistant superintendent of the institution, who is a neuro-psychiatrist of high standing, and who pronounced the ailment general paresis. The patient was released, or "paroled," as the superintendent says, on the 16th of March, 1933, seeming much improved by the treatment which he had received at the institution; but the condition of the insured grew gradually worse, and on the 2d day of January, 1935, he was adjudged an interdict and returned to the asylum, hopelessly insane. Meanwhile, according to the testimony of the psychiatrist, the insured was totally disabled and prevented, by his affliction, from pursuing any gainful occupation. Of course, as the psychiatrist admitted on cross-examination, the insured could have notified the insurance company of his affliction if he had known of it, and if he could have remembered his obligation to notify the company;

but, as the psychiatrist said, the insured did not know the nature or extent of his ailment, and was afflicted with amnesia. The fact that he never defaulted on the payment of a premium on his policies for fifteen years, or before the physicians discovered that he had paresis—together with the fact that it would have cost him nothing to save the policies from lapsing and to collect the disability benefits, by merely notifying the company of his disability—is of itself strong evidence that the insanity was the cause of his failure to notify the company of his disability.

The district judge rejected the demand of the plaintiff for the penalties—double indemnity and attorneys' fees—prescribed by Act No. 310 of 1910. The plaintiff asks for an amendment of the judgment in that respect. The statute imposes the penalties only when the insurance company delays payment "without just and reasonable grounds such as to put a reasonable and prudent business man on his guard." Section 2. We agree with the district judge that there was nothing unjust or unreasonable in the belief or hope of the insurance company that this court might adopt the company's opinion, supported by that of many courts, on the question of law which was tendered in this case, for the first time in this state. Hence it cannot be said that the insurance company's denial of liability was without reasonable ground, or such ground as might put a reasonable and prudent business man on his guard.

The judgment is affirmed.