**RAY v. NEW YORK LIFE INS. CO.**

No. 2804.

District Court, W. D. Louisiana, Alexandria Division.

Dec. 15, 1938.

John R. Hunter & Son, of Alexandria, La., for plaintiff.

Harold W. Hill, of Alexandria, La., and Montgomery & Montgomery, of New Orleans, La., for defendant.

DAWKINS, District Judge.

Plaintiff was the holder of a policy of the defendant in the sum of $1,000, issued July 22, 1918, which contained a provision to pay one-tenth of its face, or $100 per annum, in event of total and permanent disability, and further providing that all subsequent premiums would be waived. His petition alleges that since December 19, 1929, he "has been suffering with alcoholic paralysis; that he is affected in his lower extremities and his hands; that he cannot walk without the aid of sticks, or crutches, and his hands are in such condition that he is unable to use them to any avail"; and is therefore totally and permanently disabled within the meaning of said policy. Further, that from December 19, 1929, petitioner was mentally unbalanced and therefore unable to give the notice of his condition required by said policy; but that "since 1931, petitioner's mental condition has improved to such extent that he is no longer suffering from any mental incapacity, and has fully recovered the use of his said faculties"; that petitioner's brother and family physician, learning that petitioner was the holder of said policy, gave notice to the defendant and asked that forms for proof of loss be sent, but which was refused by the defendant, as well as the benefits due under said policy; and that plaintiff's wife also "took the matter up with the Company" but it denied liability and refused to make payment. Further, because of his said condition he failed to pay the premium maturing January 22, 1930, and defendant attempted to forfeit the policy, but under the circumstances he was relieved from giving the notice until a reasonable time after the recovery of his mental faculties.

He prayed that because of the willful and unjustified refusal of the defendant to make the payment of $100 per year that he have judgment for double that amount annually, beginning with 1930, and for the additional sum of $500 as attorney's fees, as provided by the State statute. Further, that the policy be held to have matured, relieving him from paying further premiums, and that he is entitled to receive annually the said disability benefits through the remainder of his life.

Defendant answered, admitting the issuance of the policy, but averred that it had lapsed for the "nonpayment of the premium due January 22, 1930, and the said policy is in force as term paid-up insurance in

the amount of One Thousand and twenty-three Dollars ($1,023.00) up to December 15, 1959". It further admitted that plaintiff's brother and family physician had given notice of his disability but averred it was not done "until November 3, 1932, and at that time the policy had lapsed for non-payment of premiums, as above set out", and that said extended insurance did not include the disability or double indemnity features of said policy. Otherwise, the allegations of the petition were denied and defendant prayed that plaintiff's demands be rejected.

John J. Ray took out a policy of life insurance with the defendant, in the sum of $1,000 on January 22, 1918, paying the premiums semi-annually, but failed to make the one due January 22, 1930. The policy contained the following provision: "* * to pay to the insured one twentieth of the face of this policy per annum during the life-time of the insured, if the insured becomes wholly and permanently disabled before the age of sixty, subject to the terms and conditions contained in Section 1 hereof."

Section 1 of the policy reads as follows:

"Section 1. Total and Permanent Disability Benefits.

Whenever the Company receives due proof before default in the payment of premium, that the Insured, before the anniversary of the policy on which the Insured's age at nearest birthday is 60 years and subsequent to the delivery hereof, has become wholly disabled by bodily injury or disease so that he is and will be presumably, thereby permanently and continuously prevented from engaging in any occupation whatsoever for remuneration or profit, and that such disability has then existed for not less than sixty days—the permanent loss of the sight of both eyes, or the severance of both hands or of both feet, or of one entire hand and one entire foot, to be considered a total and permanent disability without prejudice to other causes of disability—then

"1. Waiver of Premium.—Commencing with the anniversary of the Policy next succeeding the receipt of such proof, the Company will on each anniversary waive payment of the premium for the ensuing insurance year, and, in any settlement of the Policy, the Company will not deduct the premiums so waived. The loan and surrender values provided for under Sections 3 and 4 shall be calculated on the basis employed in said sections, the same as if the waived premiums had been paid as they became due.

"2. Life Income to Insured.—One year after the anniversary of this Policy next succeeding the receipt of such proof, the Company will pay the Insured a sum equal to one-tenth of the face of the Policy and a like sum on each anniversary thereafter during the lifetime and continued disability of the Insured. Such income payments shall not reduce the sum payable in any settlement of the Policy. The Policy must be returned to the Company for indorsement thereon of each income payment. If there be any indebtedness on the Policy, the interest thereon may be deducted from each income payment.

"3. Recovery from Disability.—The Company may at any time and from time to time, but not oftener than once a year, demand due proof of such continued disability, and upon failure to furnish such proof, or if it appears that the Insured is no longer wholly disabled as aforesaid, no further premiums shall be waived nor income payments made.

"The semi-annual premium for the Total and Permanent Disability Benefits is $.64, and is included in the premium stated on the first page of this Policy. Any premium due on or after the anniversary of the Policy on which the page of the Insured at nearest birthday is 60, shall be reduced by the amount of premium charged for Disability Benefits."

No subsequent premiums have been paid.

Plaintiff was stricken with alcoholic paralysis, commonly known as "Jac" paralysis, about the middle of December, 1929, consulted a physician and within a few days was confined to his bed, unable to talk or to use his hands or limbs. He could not make himself understood until approximately the middle of the year 1930. About April 1st he was taken to Hot Wells, Louisiana, remained there some ten days, was given hot baths at this resort and brought home. Later he was taken there once or twice more, but had to be handled as he was helpless. Some three or four months after the premium of January 22, 1930, became due plaintiff's brother, J. G. Ray, found among his mail, which had been allowed to accumulate in a basket on the plaintiff's desk in his brother's office, a premium notice that $17.85 was due on

990

January 22, 1930, and to which was attached notice of dividend and credit, reading as follows:

before he was stricken, but was unable to sit at the desk for any length of time, and his physical and mental condition were

"Notice of Dividend for 1930.

(Provided policy is in full force on the anniversary date).

New York Life Insurance Company.

51 Madison Avenue, Madison Square, New York, N. Y.

| When Due | Policy Number | Cash Dividend. |
|---|---|---|
| Jan. 22 | 6249724 | 11.22 |
| | Cash Value previous credits | 11.35 |

| | | |
|---|---|---|
| If you wish to use the dividends in reduction of premium, or interest on any loan, place a cross here and remit the net amount due the Company. | | If you wish to pay in full the premium or interest on any loan, and draw the cash dividends when due, place a cross here. |

This Notice Must Be Signed And
Returned To The Company's
Cashier From Whom Received.

Please sign here                    Owner of Policy."

Under date of April 11, 1930, defendant sent plaintiff a printed form of letter, with dates and amount of premium and number of policy filled in on typewriter, advising him that the policy had lapsed but could be reinstated on or before April 22, 1930, by paying the premium of $17.85, with 5% interest, without medical examination. Nothing having been heard from the insured, on May 23, 1930, defendant sent him printed form letter, reading as follows:

such that he could not perform his duties and his brother had to replace him with someone else. Thereupon, plaintiff engaged in the fish business for himself for about a year, which was approximately through 1931. However, he failed to make a go of it and had to give this up also. He has not since engaged in any business or performed any work, but has been supported by his brother, J. E. Ray. His lower limbs are shriveled and useless, though he

"May 23, 1930.

"Mr. John J. Ray,
"2323 Mayre St.,
"Alexandria, La.

"Dear sir:

| Policy No. | Due Date of Premium which remains unpaid | Insurance automatically continued until | Amount of Continued Insurance |
|---|---|---|---|
| 6 249 724 | 1–22–30 | 12–15–59 | $1023 |

"Application for reinstatement, after default in payment of the premium specified above, not having been made, notice is hereby given that pursuant to the terms of the policy the value of the policy has been applied to purchase continued insurance as stated above."

The latter part of 1930 or early part of 1931, plaintiff was able to go to the office in his brother's business, where he worked

gets about on crutches with great difficulty, staying up part of each day and spending the balance in bed. He cannot stand up without support or help. He handles his crutches fairly well.

"Jac" paralysis does not usually affect the mental faculties. He was not insane, but his mind was in an abnormal condition until about December, 1930. When he first got sick he was paralyzed all over, includ-

ing his tongue, and he could not speak. It was necessary for someone to be with him at all times. It took two or more persons to get him in and out of bed. He is presently unable to follow any gainful occupation. He got his mail in the postoffice box of his brother, J. E. Ray, before getting sick.

The first communication by the plaintiff to the defendant with respect to the policy was dated February 24, 1931 and reads as follows:

"Phone 944.                    P. O. Box 363
        "Standard Fish Company.
        "Wholesale and retail.
        "Fish and Oysters.
        "Alexandria, La. Feb. 24, 1931—
"New York Life Ins. Co.
"Shreveport, La.

"The *wrighter* is a policy holder containing a disability clause. I ask your agent who wrote the policy to get a blank, so I might go to a Dr. and be examined, and fill out same—Mr. M. P. Jordan advises that Dr. Parker is your Dr. If you will mail me this blank I will go to him or any other Dr. you advise, and will let you have this report at once. It is time this report was in your office as *I have been disable one year next Nov.*

        "Yours very truly,

                        "J. J. Ray."

This letter was written about the time plaintiff began the effort to operate his own fish business, known as the Standard Fish Company, or within thirty to sixty days thereof. He swears that he did not see any of his accumulated mail until about the time he wrote this letter. His wife knew nothing of this policy of insurance and did not find out about it until sometime in 1931 or 1932. She wrote the Company the first time on August 26, 1933. She did not open any of his mail while he was sick. When his brother found the premium notice, the dividend and credit exceeded slightly the amount of the premium, and he gave no further thought to it until his attention was brought to the matter later on.

When plaintiff started his own fish business he could not use his hands at all and his wife had to assist him.

■ I think he has been unable to pursue any gainful occupation within the meaning of the policy since he was first stricken and that this condition is permanent. The question to be determined here is whether, under these facts and the law, plaintiff is entitled to recover the disability benefits and to have the premiums waived.

■ One line of jurisprudence is undoubtedly against him, including some federal decisions, but in view of recent decisions of the Supreme Court of the United States, I think I am bound to follow the rulings of the State court as to his inability to give the notice required by the policy.

In the case of Hickman v. Pan-American Life Insurance Company, 186 La. 997, 173 So. 742, the Supreme Court of Louisiana held that mental incapacity caused by paresis relieved an insured from the necessity of giving notice of his total and permanent disability as a prerequisite to the receiving of benefits under a policy similar to the one now in dispute. That court, through Chief Justice O'Niell, cited the jurisprudence of the country referred to by the Supreme Court of the United States in Mutual Life Insurance Company v. Johnson, 293 U.S. 335-340, 55 S.Ct. 154, 79 L.Ed. 398, as illustrating the opposing views on the subject, the one holding, according to the strict letter of the policy, that mental incapacity did not excuse failure to give notice of permanent disability before the contract lapsed, and the other directly to the contrary, ruling that if the notice were given within a reasonable time after recovery by the insured of his mental faculties or the discovery of those interested in him, this would be sufficient to entitle the policy holder to the benefits of such a policy. Chief Justice O'Niell quotes approvingly from the editorial note in 54 A.L.R. 611, referring to the case of Pfeiffer v. Missouri State Life Insurance Co., 174 Ark. 783, 297 S.W. 847, 54 A.L.R. 600, as follows [186 La. 997, 173 So. 744]: "The overwhelming weight of authority is to the effect that the insured, in policies requiring notice of the accident or disability within a stipulated time after the occurrence thereof, is excused for his failure to give such notice within the stipulated period if he is prevented from so doing by reason of mental incapacity resulting from the accident or disability, provided such notice is given a reasonable time after recovering his mental faculties."

■ In the Hickman case the court found as a fact that at the time of the failure to pay the premium or to give notice and furnish the proof required by the policy, the insured was, because of insanity produced by paresis, incapable of doing so; that he was on Feb. 13, 1933,

placed in an asylum without interdiction, where his ailment was definitely diagnosed as paresis, but was released or "paroled" on the 16th of March of the same year, "seeming much improved by the treatment which he had received at the institution; but the condition of the insured grew gradually worse, and on the 2d day of January, 1935, he was adjudged an interdict and returned to the asylum, hopelessly insane." The court states that "the insured could have notified the insurance company of his affliction if he had known of it, and if he could have remembered his obligation to notify the company; but * * * the insured did not know the nature or extent of his ailment, and was afflicted with amnesia." In other words, his condition prevented his remembering or appreciating the fact that he had a policy of insurance with provisions requiring notice of his trouble or for that matter what his trouble was. The evidence in the case before this court reasonably indicates that Ray's condition was such that, while not amounting to insanity, he did not remember or realize that he had such an insurance policy until his attention was directed to it about the time he wrote the first letter to the defendant company. Under those circumstances, and in line with the doctrine of the cited cases, I think he gave notice within a reasonable time of his condition after regaining his faculties. I think he is entitled to recover the stipulated annual payments, beginning in 1930, but that he should not be awarded double benefits or attorney's fees, for the reason that the failure or refusal of defendant to pay was not "without just and reasonable grounds such as to put a reasonable and prudent business man on his guard", as was held in the Hickman case.

Proper decree should be presented.