LAND, Justice.
 

 This is a suit by George F. Williamson to recover, disability benefits on a policy of insurance in the sum of $2000, issued on his life by defendant Insurance Company on November 17th, 1922.
 

 The policy provides for waiver of the annual premium of $113.56 and for payment of disability benefits of $20 per month.
 

 During the pendency of the suit, George F. Williamson died and George Newton Williamson, his son and heir, was substituted as plaintiff.
 

 The particular clause in the policy involved in this case reads as follows:
 

 “If the insured, after payment of premiums for at least one full year, shall, before attaining the age of sixty years and provided all past due premiums have been duly paid and his policy is in full force and effect, furnish due proof to the Company at its home office either (a) that he has become totally and permanently disabled by a bodily injury or disease, so that he is, and will be, permanently, continually and wholly prevented thereby from performing any work for compensation, gain or benefit, or from following any gainful occupation, or (b) that he has suffered any of the following specified disabilities (which shall be considered total and permanent disabilities hereunder), namely, the entire and irrevocable loss of the sight of both eyes or severance of both entire hands or both entire feet or if of one entire hand and one entire foot, the Company, upon receipt and approval of such proof, will grant the following benefits.”
 

 (1) We do not concur in the finding of the trial judge, that George Williamson was in a
 
 “state of physical and mental helplessness” on January 1, 1930,
 
 and therefore his failure to give notice and furnish proof of his disability to the Company was excused, under the doctrine of the case of Hickman v. Pan-American Life Insurance Company, 186 La. 997, 173 So. 742.
 

 Judgment was rendered in the District Court in favor of plaintiff for all benefits claimed by the insured, and also for all premiums alleged to have been paid by
 
 *341
 
 him through error. From this judgment, defendant Insurance Company has appealed.
 

 In the Hickman case, the court said:
 

 “The question in this case is whether, under a life insurance policy providing for a total disability benefit and requiring that proof of any such disability shall be furnished before default in the payment of a subsequent premium, a failure to give the notice before default in the payment of the premium is excusable when insanity is the cause of the disability and of the failure to give the notice. The judge of the district court decided in favor
 
 of the insured. He is an interdict, confined in a state hospital for the insane,
 
 and is represented in this suit
 
 by his wife, as curatrix.
 

 “The insurance company has appealed from the decision.”
 

 In the Hickman case, the court held that the evidence showed
 
 that the insured suffered "from paretic insanity and amnesia at time of his default in payment of premium,”
 
 so as to excuse both his default in payment and his failure to give notice of the disability at the time.
 

 (2) The insured in the case at bar attained the age of sixty years on April 20, 1932. No notice of disability was given to the Company until November 1934.
 

 The insured worked as a macaroni salesman for the Shreveport Macaroni Company from the year 1926 through the year 1934. During this period his income amounted approximately to the sum of $50 per week. Suit was. filed August 23, 1937.
 

 The lower court held that George Williamson was in a
 
 "state of physical and mental helplessness” -on January 1, 1930,
 
 although the insured continued to work in his usual occupation as a macaroni salesman
 
 through the year 1934,
 
 and received a salary of $50 per week.
 

 Defendant company contends that the requirement of notice was a condition precedent, and that failure of the insured to furnish proof of disability before the age of 60 years defeated any claim by him for disability.
 

 On the other hand, plaintiff contends that the. requirement in the policy as to notice of disability is a condition subsequent.
 

 Be that as it may, the evidence in the case clearly shows that plaintiff was neither in a “state of physical” or “mental helplessness”, either before or after he became 60 years of age, but continuously and profitably engaged in his own occupation.
 

 Under such conditions, whether the giving of the notice as to disability be a condition precedent, or a condition subsequent, is of no importance in the case, since the evidence abundantly shows that the bodily disease, “shaking palsy”, did not create such disability as to render the insured unable to perform the substantial and material acts of his occupation in the usual and customary way. Crowe v. Equitable Life Assur. Soc., 179 La. 444, 154 So. 52.
 

 The most competent witnesses in the case, as to the insured’s alleged physical and mental disabilities, are his two em
 
 *343
 
 ployers, Mr. Joseph Sunseri, general manager, and Mr. A. M. Saracco, secretary-treasurer of the Shreveport Macaroni Company. Both of these witnesses testified that the insured worked for them from the year 1926 through the year 1934; that he made a very appreciable income, considering his age and the hard times in the years 1930, 1931, 1932, 1933, and 1934; that the insured drove his own car until sometime in 1933, and traveled a very large territory, calling on some seventy-five different customers.
 

 Both Mr. Sunseri and Mr. Saracco testified that undoubtedly the insured during his employment was an intelligent and capable business man and carried on his work efficiently; and that there was never any doubt as to his soundness of mind or sanity. Had there been any doubt, they surely would have dismissed him immediately; and that the insured was capable; at all times, of understanding sales contracts and business affairs through the year 1934. Transcript, pages 175-184.
 

 Earnest Bunkum, the negro chauffeur of the insured, testified that he was employed to drive his car on the road in the latter part of 1932, and that he continued to work up until 1934; that the insured was a sane man and a hard worker.
 

 This witness testified as follows:
 

 “Q. About how many business houses or customers would he call on in a day? A. When we would get in a big city he would have a lot of them but I would not be with him then. He would leave the car in storage and then he would walk to see the customers.
 

 “Q. Will you please state how large a territory he was traveling in ? A. Arkansas, Oklahoma, Louisiana and Texas.” Transcript, pages 187-189.
 

 Mr. V. Frank Lynn, who was in the wholesale grocery business in the City of Monroe, La., and upon whom the insured called continually during the years 1929 to’ 1933, testified that .the insured made his calls in the capacity of traveling salesman: for the Shreveport Macaroni Company,, and got all of their business during these years; and that he seemed to have a perfect understanding of his business and of the transactions he consummated. Tram-script, pages 148-152.
 

 Miss Gladys Richardson, a Notary Public before whom the insured executed his change in beneficiary form, testified that she knew Mr. Williamson during the years 1928 to 1934 and had done work for him off and on, and that she thought that he was a perfectly sane and competent man. She even testified that she congratulated him on the efficient way in which he dictated his letters and thought that, at all times, he was an efficient and active business man. Transcript, pages 138-146.
 

 In the year 1930, the insured purchased a car from the Bernstein-Landford Motor Company, and signed the sales and chattel mortgage .documents. Mr. J. B. Landford, manager of the company, testified that the insured was a perfectly rational man, with all of his mental faculties. Transcript, page 160.
 

 In the year 1932, the insured also purchased a car from the Motor Securities Company. Mr. Edward F. Gullatt, man
 
 *345
 
 ager of the company, testified that he had other business transactions with the insured, and found him, at all times, mentally normal, and knew that he was working as a salesman for the Shreveport Macaroni Company. Transcript, page 173.
 

 In both of these transactions, an investigation of the insured’s credit, and of his position and earning capacity was made.
 

 Mr. R. M. Mays, who knew the insured personally, stated that he was working during 1931, 1932 and 1933; that he thought that he could get opt and make a living, that he was doing so at the time, and that the insured was a sane and rational man during those years. Transcript, page 185;
 

 As late as August 1933, the insured executed a sale and chattel mortgage in the purchase of a Plymouth i two-door sedan from the Geo. D. Wray, Inc. Mr. B. L. Terrell, office manager, testified that a complete credit investigation was made as to the insured, which met his approval, and that insured appeared to be in complete control of his mental faculties at that time. Transcript, pages 190-194.
 

 Also, during the year 1933, the insured executed a loan agreement with the Mutual Life Insurance Company of New York. Mr. Henry A. O’Neal, district manager, testified that the insured appeared to un: derstand the loan transaction perfectly, and even on one occasion corrected a mistake in the figures made by the Company’s employees. Transcript, pages 196-200.
 

 The above testimony abundantly shows that the insured was sane. The testimony of Mrs. George Williamson and of Dr. William K. Knoeffel, to the contrary, is negligible.
 

 Our conclusion is that the lower court erred in holding that the insured, who was able to earn a living and carry on a business, with a proper understanding at all times, came within the decision in the case of Hickman v. Pan-American Life Insurance Company, 186 La. 997, 173 So. 742.
 

 It is therefore ordered that the judgment appealed from be annulled and reversed; that plaintiff’s demand be rejected; and that plaintiff’s suit be dismissed at his costs.