16 So.2d 821

BELL v. ACACIA MUT. LIFE INS. CO.
No. 36957.

Jan. 3, 1944.
Rehearing Denied Feb. 7, 1944.

E. M. Thore, of Washington, D. C., and Montgomery, Fenner & Brown, of New Orleans, for defendant appellant.

Sidney I. Foster, of Leesville, for plaintiff appellee.

ROGERS, Justice.

On July 1, 1922, the Masonic Mutual Life Association of the District of Columbia, now known as the Acacia Mutual Life

Insurance Company, issued its policy in the sum of $5,000 to Johnie Graham Bell, with his wife, Helon Octavia Bell, as beneficiary. The first annual premium of $146.45 was paid by Bell to the insurance company when the policy was delivered. and this was the only premium ever paid on the contract of insurance. Bell died on January 13, 1941. On November 12, 1941, Mrs. Helon Octavia Bell, the beneficiary, brought suit on the policy and obtained judgment in the district court for $5,000, the amount stipulated in the policy, with interest. Defendant has appealed from the judgment.

The policy provides for the "total and permanent disability" of the insured as follows:

"If a member furnishes the Association with satisfactory proof that he has become totally disabled by bodily injury or disease, while the contract is in full force, and before he has attained the age of 60, so that he will be permanently, continuously, and wholly prevented for life from engaging in any work or employment for wages or profit, then the association will waive the future payments as the same become due on the contract during such disability, and the payments so waived will not be deducted in any settlement under the contract and any values or benefits provided for in the contract shall be the same as if said payments had been duly made to the association."

Plaintiff alleges that her husband became insane in August, 1922, after the policy had been in effect for more than a month, but within two months from the date it

was issued and that he was never able to perform any labor or to transact business of any kind thereafter. On June 25, 1923, before the second premium became due on the policy, the insured was committed by judgment of the district court of Grant Parish to the Louisiana State Hospital for the insane at Pineville where he was confined from six to eight years at different times during the remainder of his life. He was never formally discharged from the asylum, but was permitted to remain with his family from time to time until his death. Plaintiff alleges that her husband became totally disabled by reason of his mental condition in August, 1922, while the contract of insurance was in force and before he had reached the age of sixty years, and that he remained totally and wholly incapacitated and totally disqualified for any sort of labor or employment for the remainder of his life and that under the provisions of the policy defendant association is obligated to pay the amount sued for. Plaintiff further alleges that no notice of forfeiture for nonpayment of the premium was ever given to or received by her husband as provided by law.

The defendant association denies that it is liable on the policy sued on for the reason that the policy had lapsed for non-payment of the premium due on July 1, 1923, or within the thirty-day grace period and that the policy was not in effect at the time of the death of the insured, notice having been timely given. The defendant also pleads the prescription of two to ten years.

Defendant urges, in the alternative, that in the event the court should find that a notice showing the due date of the premium of July 1, 1923, was not sent to the insured in accordance with Act 68 of 1906, that the policy became effective in Washington, District of Columbia, and that under the laws of the District of Columbia, no notice is required and that the failure to send such a notice does not prevent the forfeiture of the policy for nonpayment of the premium. Defendant pleads further, in the alternative, that it was a fraternal benefit society at the time the policy was issued and that at the time the policy was forfeited for nonpayment of the premium and hence is not governed by the provisions of Act 68 of 1906.

And further, in the alternative, defendant pleads that neither plaintiff nor the insured ever furnished defendant with proof of disability of the insured until August 6, 1941, which was six months after the death of the insured.

The first question presented for consideration is whether the insured became disabled as provided in the policy. If this question is determined as contended by plaintiff, it will not be necessary to consider any of the other questions involved in the case. On this question, the plaintiff offered the evidence of lay-witnesses, together with a copy of the papers committing the insured to the insane asylum. Defendant offered no evidence at all.

The uncontradicted evidence offered by plaintiff shows substantially the following facts: When the policy was issued, Johnie Graham Bell, the insured, and his family, were residing in the oil field at Homer, in Claiborne Parish, in 1922, where Bell was

employed at an ice plant. The insured became insane in August, 1922, and was placed in jail at Homer for striking a man. He was later released to his brother, Oscar Bell, who carried him to the home of his father in Grant Parish. The wife and family of the insured returned to Grant Parish about three weeks later. In June, 1923, the insured was committed to the Louisiana State Hospital for the Insane at Pineville by judgment of the District Court of Grant Parish. The insured was never discharged from the hospital, but was permitted at different times to return to his family in Grant Parish where he would remain until it became necessary to return him to the asylum. He spent from six to eight years in the asylum from June, 1923, until his death on January 13, 1941.

No medical evidence, other than the commitment proceedings, was offered, because the physicians who attended the insured in the asylum and knew his condition were both dead. Defendant objected to the evidence of the non-expert witnesses and the commitment proceedings produced by plaintiff to establish the insanity of the insured. The evidence was admitted subject to the objection. The evidence was admissible and was properly considered by the trial judge in rendering his judgment.

The general rule regarding the admissibility of non-expert testimony as to the mental condition of insanity is stated in Chamberlayne's Modern Law of Evidence, Vol. III, sec. 1908, p. 2568, as follows:

"In a majority of English speaking jurisdictions, the inference of the ordinary observer as to the mental condition of insanity has been received. As in case of the more active form of insanity, an ordinary observer, with suitable opportunities for observation, may state his inference whether a given individual is a lunatic or weak minded. * * *

"Thus, he may be allowed to declare whether he noticed anything unusual, peculiar, unnatural or tending to indicate insanity."

The rule is also stated in 20 Amer. Jur., sec. 852, p. 713, as follows:

"Opinion evidence upon an issue of sanity or insanity is not confined to opinions of medical men—that is, expert testimony. It may not be possible for a physician not familiar by experience with some of the peculiar indefinable but certain symptoms of insanity to determine its existence without actually observing the person for a considerable length of time. It is now well established, in all, except a very few jurisdictions, that a nonexpert witness who bases his testimony upon facts and circumstances known to, and related by, him may be permitted to give opinion testimony as to the sanity or insanity of a person whose mental condition is being investigated."

In this state it has been expressly held that where the issue is one of insanity, the opinion of non-expert witnesses is admissible to prove insanity subject to the rule that the witness must first testify to the specific facts on which his opinion is based. State v. Lyons, 113 La. 959, 37 So. 890; State v. Montgomery, 121 La. 1005, 46 So. 997; State v. Madena, 165 La. 474,

115 So. 661; Reiners v. Humble Oil & Refining Co., 192 La. 415, 188 So. 47.

■ After ruling that the testimony of the non-expert witnesses was admissible, the trial judge correctly found the following facts:

"These non-expert witnesses were members of the family and those who resided in the community near the family of the insured. They saw him frequently during the times he was released from the asylum and while in the home with his family. These witnesses detail facts which show that the insured never acted at any time as one mentally normal. His conduct, sayings and mannerisms indicated at all times that he was insane from August, 1922, until January, 1941, when he died. He seemed to be harmless in so far as wanting to or attempting to injure himself or any one else but he never appeared to have any ability to carry on a conversation with any intelligence or understanding or to know or appreciate what was happening to him or any member of his family or any other person. He was not interested in the affairs of life because of his mental condition. This mental condition permanently, continuously and wholly prevented him from engaging in any work, employment for wages, or business for profit by which he could support himself and family. This condition began during the first year the policy in question was in force and continued until the date of the death of the insured."

■ The commitment proceedings under which the insured was committed to the insane asylum were not resorted to by his relatives until about ten months after the first symptoms of insanity appeared. The insured, after striking a man, was placed in prison in Homer and later released to his relatives upon their promise to be responsible for him. The delay of his family in having the insured committed to the insane asylum in some measure supports the contention that his mental condition of insanity was permanent. Obviously, his relatives, after ten months or more of observation and treatment, reached the conclusion that the insured was permanently insane and thereupon invoked the proceedings under which he was committed to the insane asylum. The record shows that while the insured was permitted to return to his family from time to time, he was never formally discharged from the asylum. The policy provides that before the insured can obtain the benefit of the disability clause he must furnish satisfactory proof that he had become totally disabled by bodily injury or disease. No notice of disability was given the insurance company by the insured. Neither was the second premium paid on the policy. This in itself would ordinarily serve to lapse the policy even if the premiums were waived in the case of disability. An exception to the general rule is recognized by a majority of the courts where the disability for which the insurance benefit is claimed consists of insanity such as to disable the insured from giving the notice. This exception was recognized and enforced by this Court in the case of Hickman v. Pan-American Life Insurance Company, 186 La. 997, 173 So. 742. The opinion in that case reviews many decisions by the courts of other states and by the Su-

preme Court of the United States. Following the discussion of those cases in other jurisdictions that maintain insanity is not an excuse for the failure of a policyholder to pay a premium falling due during such disability, this Court said, 186 La. at page 1003, 173 So. at page 744 of the Hickman case: "The courts that hold the other way say that the parties entering into a contract of insurance providing for a total disability benefit, and requiring proof thereof to be furnished by the insured to the insurer before default in the payment of a premium, do not contemplate that the cause of the disability may be insanity, and may therefore make it utterly impossible to give the notice within the period stipulated; hence these courts maintain that it goes without saying that one of the parties to such a contract shall not be obliged to do something which providence alone has made impossible. That is the opinion of a majority of the courts; and we have decided to approve and adopt it."

The decision in the Hickman case was followed by the decision of the Court of Appeal, Second Circuit, in the case of Powell v. Liberty Industrial Life Insurance Company, 1 So.2d 834, 837, wherein the court observed as follows on the question decided in the Hickman case: "We fully agree with that decision. To hold otherwise would be to forsake reason and justice by requiring an insane insured to do that which is impossible for him to do. We therefore conclude that the two-year prescriptive or peremptive provision in the policy is without effect as to an insane person for whom a legally appointed curator had not been provided. There is no sug-

gestion that a curator was ever appointed to the insured in the case at bar, during the period of his insanity and prior to his death."

It will thus appear that, under the jurisprudence of this State, insanity is excepted from the general rule which enforces, under penalty of forfeiture, a stipulation in an insurance policy that all premiums must be paid on or before the date provided by the terms of and the laws governing the policy.

■ Since the evidence in this case shows the insured became mentally deranged in August, 1922, and that his condition remained the same during the balance of his life, the exception must be enforced.

In view of the foregoing considerations, it is not necessary to discuss the question of whether a notice covering the premium due July 1, 1923, was sent to the insured as required by the provisions of Act 68 of 1906. In passing, however, we may observe that while the defendant, over plaintiff's objection offered some evidence on this point, the evidence is not satisfactory. And since defendant became insane before the premium became due, notice of its nonpayment sent to the insured could not avail the defendant company, because all subsequent premiums were waived by the terms of the policy so long as the insured was totally disabled.

Since the insured was insane, he was incapable of responding to a notice of nonpayment of premium and thereby keep the policy in effect by paying the premium notwithstanding he was excused from doing so by reason of his insanity. The defendant

insurance company contends that, even though the insured may have been mentally incapable of complying with the terms of his policy and of giving notice of his disability, his wife, as the beneficiary therein, should have given the notice. In the Hickman case, this Court held that if insanity was the cause of the disability, and since this was not contemplated by the parties when the contract of insurance was entered into, notice of the disability was automatically dispensed with and that evidence of such notice from any source was not a condition precedent to recovery.

■ While undoubtedly it would not have been improper for the wife of the insured to give the defendant insurance company the notice, nevertheless her failure to do so can not prejudice her rights. It was not her rights which could be affected by the giving or failure to give notice. It was the rights of the insured, who, by the express terms of the policy, was authorized to change the beneficiary at any time. Moreover, there is no satisfactory proof that she knew of the policy requirement. On this phase of the case, the record shows that plaintiff knew that her husband took out the policy in 1922, but she was not advised as to its terms or conditions. In 1923 or 1924, she delivered the policy to a certain Dr. Reed to whom she was indebted for professional services. Dr. Reed received the policy stating, in the words of the witness, "he would see if he could get it collected." Dr. Reed never returned the policy to plaintiff and she never saw it again. In going over some papers after the insured's death, plaintiff found the premium receipt of the insurance company dated July 21, 1922, and thinking that "maybe it (the proceeds of the policy) could be collected after his (insured's) death," she placed the matter in the hands of her lawyer to investigate. After some correspondence with the defendant company, plaintiff's lawyer obtained a photostatic copy of the policy on which the suit was actually brought.

The defendant insurance company, if it had seen fit to do so, could have specifically provided in the insurance contract itself that in case of insanity of the insured, the benefits for his disability should belong to the beneficiary who, in that event, should give the notice. No such clause appears in the policy herein sued on and this Court has no power to write it into the insurance contract.

■ Defendant is not pressing in this Court its pleas of prescription. The trial judge did not think the pleas were well founded, nor do we. Plaintiff's right to institute the suit did not arise until the death of the insured. The suit was timely filed and neither prescription pleaded by the defendant is sufficient to defeat plaintiff's action.

■ Plaintiff's suit is predicated primarily upon the total disability of the insured, caused by insanity, and we have resolved that highly controverted question in plaintiff's favor. Therefore, the question of whether the insurance contract is governed by the laws of Louisiana or by the laws of the District of Columbia, particularly with reference to the requirement that notice of

non-payment of the premium be given before the contract becomes unenforcible, passes out of the case.

For the reasons assigned, the judgment appealed from is affirmed.