Appellants rely on other cases, which we have read carefully and find not to be decisive here.

For the reasons assigned, the judgment appealed from is affirmed; appellants to pay all costs.

LE BLANC, J., absent and takes no part.

**54 So.2d 409**

**AYRES v. NEW YORK LIFE INS. CO.**
**No. 38794.**

June 29, 1951.

Rehearing Denied Oct. 2, 1951.

———————

Blanchard, Goldstein, Walker & O'Quin, Shreveport, for defendant-appellant.

Meadors, Shaw & Meadors, Homer, for plaintiff-appellee.

McCALEB, Justice.

This is a suit by the widow of Raymond Q. Ayres to recover, as beneficiary and as widow in community and usufructuary, certain disability benefits and premiums paid under a life and accident policy issued to her deceased husband. The litigation has its origin in the following state of facts:

On October 26th 1926, New York Life Insurance Company insured Raymond Q. Ayres for $2500. The policy contained total disability provisions under which the insured, upon proof of permanent disability as the result of bodily injury or disease, would be entitled to receive $25 per month and the company further agreed to waive all premiums falling due during the period of such disability. Ayres was an oil field worker, his particular employment being that of pumper or stationary engineer—a laborious pursuit. In the Fall of 1933, while working for the Shreveport-El Dorado Pipe Line Company, Ayres was stricken with pains in the stomach and chest. This attack, from which he recovered within a short time, was diagnosed as acute indigestion by his physicians, Drs. E. A. Campbell and S. A. Tatum of Homer, Louisiana. Later, he secured employment with Standard Oil Company as a casual worker and pumper near Smackover, Arkansas, but, on June 15th 1934, he was discharged from this position because he was unable to qualify physically, in conformity with tests required by the Company. Soon after his discharge, Mrs. Ayres wrote to defendant requesting blank forms for the purpose of filing a claim for disability under the policy because of heart disease. These forms were furnished by defendant but they were never completed by Ayres because his physicians (Drs.

Campbell and Tatum, who were also medical examiners for defendant insurance company) were unwilling to certify that he was afflicted with heart trouble and expressed the opinion that he was not.

In November of 1935, Ayres suffered a severe attack of sciatic rheumatism or arthritis, which disabled him completely. On January 9th 1936, after execution of proper proofs, defendant began payment of the monthly disability benefit. These payments were made until May 9th 1936, when defendant, having been informed that Ayres was operating a filling station on the outskirts of Homer, discontinued the benefits on the ground that, since the insured was able to do some kind of work, he could not be totally and permanently incapacitated. Disability benefit payments were not thereafter resumed until June of 1939. Prior to that date, Ayres suffered another attack of sciatic arthritis and, in September 1940, he sustained a coronary occlusion followed by myocarditis. When this seizure affecting the coronary arteries occurred, Drs. Campbell and Tatum revised their opinions and declared that it was highly probable that Ayres had been suffering from heart trouble since the initial attack in 1934, which they had diagnosed as acute indigestion. At any rate, Ayres remained disabled for the rest of his life, that is, from June 1st 1939 until his death on March 16th, 1945 and, during that period, disability benefits were paid by defendant.

In this action, plaintiff seeks a refund of premiums and recovery of disability benefits at $25 per month from June 16, 1934 to June 1st 1939 (when the Company started regular payments of the monthly benefits which continued until the insured's death) less the payments made to her husband during the period from January 9th to May 9th 1936. She further claims penalties in a like sum under Act No. 310 of 1910, now LSA–R.S. 22:657, together with attorneys' fees, alleging that defendant has failed to pay, without just and reasonable grounds, for more than thirty days from written notice and proper proof furnished it respecting the disability of the insured under the policy.

Defendant resists liability on several grounds, the principal ones being that the insured did not suffer disability from heart disease at the time claimed by plaintiff, and that, even if he did, recovery may not now be had because of the insured's failure to furnish it with timely proofs of the disability, as provided in the policy. In addition, defendant filed special pleas of estoppel and prescription of 10 years liberandi causa.

After a hearing on these issues, there was judgment below in plaintiff's favor for a refund of premiums and for disability benefits at $25 per month from May 9th 1936 to June 1st 1939 with penalties in a like sum and $750 attorneys' fees. However, the judge denied the claim for benefits beginning in June 1934 and extending

to January 1936, holding that proof of that disability had not been timely filed with the defendant and that the furnishing of such proof within a reasonable time was a condition precedent to liability. Defendant has appealed and plaintiff has answered seeking an increase in the award so as to include recovery of benefits from June 1934 with penalties and attorneys' fees.

█ Plaintiff's claim for an increase in the judgment appealed from is not tenable for the reason that her demand for disability payments extending from June 1934 to January 9th 1936 is prescribed. This is a personal action subject to the prescription of ten years provided by Article 3544 of the Civil Code. The suit was not filed until February 25th 1946 and consequently all monthly disability payments falling due more than ten years from that date are barred. .

█ Plaintiff maintains, however, that the running of prescription was suspended from the month of August 1941 until the death of the insured in March 1945 because he was so seriously ill that he could not stand trial without jeopardizing his life. It is said that, due to the insured's incapacity, he could not act to protect his rights and that, therefore, this is a proper case for the invocation of the maxim "contra non valentem agere nulla currit praescriptio".

There is no merit in the contention. To begin with, it is manifest that the insured's illness afforded no excuse for the failure to make timely legal demand on his behalf. Besides, the doctrine "contra non valentem" has been received in Louisiana with some question and the court's recognition of it as a cause for suspending the course of prescription has been quite restricted. Application of the doctrine has been held to be limited to cases where the debtor has concealed the fact of the obligation or has committed other acts which tend to hinder, impede or prevent the creditor from ascertaining knowledge of the existence of the debt. Hyman v. Hibernia Bank & Trust Co., 139 La. 411, 71 So. 598; Reardon v. Dickinson, 156 La. 556, 100 So. 715; Bernstein v. Commercial Nat. Bank, 161 La. 38, 108 So. 117; Littlefield v. City of Shreveport, 148 La. 693, 87 So. 714; Arkansas Natural Gas Co. v. Sartor, 5 Cir., 78 F.2d 924; Succession of Kretzer, La.App., 170 So. 906; Cruze v. Life Ins. Co. of Virginia, La.App., 184 So. 735 and Pope v. Employers Liability Assur. Corporation, La.App., 14 So.2d 105. Under Article 3521 of the Civil Code, it is provided that prescription runs against all persons "unless they are included in some exception established by law". The illness of the insured in this case does not fall within any of the exceptions provided by our Code and there-

fore the running of prescription was not suspended.[1]

██ Disposal of plaintiff's claim for disability benefits from June 1934 to January 9th 1936 leaves for discussion the correctness of the judge's ruling that defendant is liable for benefits from May 9th 1936 until June 1st 1939. As stated above defendant denies responsibility on the ground that the insured was not disabled as a consequence of heart disease and further contends that proofs of disability were not timely furnished by the insured. The latter assertion is not borne out by the record because the insured received disability payments from January 9th until May 9th 1936 based upon proofs of disability submitted to the defendant in January 1936 that he was suffering from sciatic arthritis. These payments were discontinued by defendant solely on the ground that the insured was able to work and therefore was not totally and permanently disabled within the meaning of the policy. In view of this, it is manifest that no further notice relative to disability following May 9th 1936 was essential.

██ Defendant's contention that the plaintiff has failed to prove that the insured was disabled during this period (May 9th 1936 to June 1939) is not well founded as the evidence is clear and uncontradicted that, at the time defendant discontinued payment of the disability benefits on May 9th, 1936, the insured was totally and permanently disabled from pursuing his usual occupation as an oil field pumper by reason of sciatic arthritis.[2]

1. In urging that prescription was suspended during the insured's illness, counsel for plaintiff rely on three cases holding that policy provisions respecting the giving of notice of disability, or even the filing of suit, are inapplicable when the insured becomes insane and is therefore unable to act. These cases, Powell v. Liberty Industrial Life Ins. Co., La.App., 1 So.2d 834; Hickman v. Pan-American Life Ins. Co., 186 La. 997, 173 So. 742 and Bell v. Acacia Mut. Life Ins. Co., 204 La. 1005, 16 So.2d 821, are appropriate only on the question of the enforceability of certain conditions of an insurance contract and are without pertinence to the suspension of the prescription provided by law.

2. Drs. Campbell and Tatum testified that the sciatic rheumatism suffered by the insured permanently disabled him from engaging in his customary occupation. And, in the proof of claim furnished defendant on January 23rd, 1936 by the insured (upon which disability payments were made beginning January 9th, 1936), Dr. Tatum stated that the sciatica affecting the insured's left leg rendered him totally disabled as of December 9th, 1935; that the length of time he would be unable to pursue any gainful occupation was undetermined but that it was his opinion that the insured "cannot again take up heavy oil field work". Also, in the proof furnished on March 3rd, 1936, Dr. Tatum says that the assured "will not again be able to engage in the type of work he has done heretofore".

In fact, the only reason given by defendant for discontinuing the benefits was that the insured was operating a gasoline filling station.

A review of the testimony has convinced us that the insured became disabled from pursuing his usual occupation in 1934 and that he remained incapacitated until his death in 1945. As to whether this disability resulted from heart disease prior to 1940, when the insured suffered a coronary occlusion, there is room for doubt. Plaintiff's witnesses, Drs. Campbell and Tatum, state that the occurrence of the coronary occlusion in 1940 caused them to revise their previous diagnosis of a negative heart condition and that they are now of the opinion that the acute indigestion suffered by the insured in 1934 was a heart attack.

On the other hand, defendant's witness, Dr. Edgar Hull, an eminent heart specialist, entertains the view, after investigation of the insured's symptoms and the general history of the case, that the coronary occlusion sustained in 1940 was of recent origin and a similar opinion is voiced by Dr. Bodenheimer, another defense witness.

The trial judge resolved the divergence of opinion in favor of plaintiff and it would be difficult, even if we were so inclined, to conclude that there is manifest error in his ruling on this question of fact. However, it is unnecessary that we base our decision upon a finding that the insured was totally disabled as the result of heart disease in May of 1936 for the evidence fully supports the belief that he was permanently disabled within the meaning of the policy by reason of sciatic arthritis. Indeed, as we have above stated, the defendant did not discontinue the monthly disability payments because the insured's sciatica had alleviated but solely on the ground that, since he was assisting in the operation of a gas station, he was engaged in an occupation for remuneration or profit and therefore was not disabled under the provisions of the policy even though he was physically unable to pursue his usual occupation or engage in similar work to which he was accustomed prior to the onset of his disability. This position of defendant was not in keeping with the view of the courts of this state respecting the meaning of total and permanent disability under policies of this sort. It is well settled that policy provisions stipulating for benefits "whenever the Insured is so disabled by bodily injury or disease that he is wholly prevented from performing any work" etc., do not contemplate that the insured is to be rendered absolutely helpless in order to recover but only that he be unable to do substantially all the material acts necessary to the prosecution of his business or occupation in his customary and usual manner. Crowe v. Equitable Life Assur. Soc., 179 La. 444, 154 So. 52; Boughton v. Mutual Life Ins. Co. of New York, 183 La. 908, 165 So. 140; Madison v. Prudential Ins. Co. of America, 190 La. 103, 181 So. 871 and Strauss v. New York Life Ins. Co., 204 La. 202, 15 So.2d 61.

■ But counsel for defendant insist that, since plaintiff has alleged that the disability resulted from heart disease, she cannot be permitted to recover on a showing that the insured became disabled by any other illness.

We are not impressed with this argument. In the first place, we do not agree with counsel that plaintiff has pitched her case solely on the heart trouble suffered by her deceased husband. The petition, as we read it, states the facts respecting the insured's disability and the diagnosis made by his physicians, both at the time the proofs of disability were furnished in 1936 and also in 1940 when he suffered a coronary occlusion. But, aside from this, plaintiff's recovery is not restricted to proof that the insured was disabled by heart disease. The policy provides for benefits for disability resulting from bodily injury or disease which incapacitates the insured from performing his usual work. Hence, any evidence tending to show such disability was admissible even though the particular cause of the disability was not specially pleaded. It may be that, under such circumstances, defendant would be entitled to a continuance, upon pleading surprise, but this would not have any bearing upon plaintiff's right to administer proof of the disease or injury causing the claimed disability.

■ Counsel also urge the maintenance of defendant's plea of estoppel. This plea, insofar as it applies to the disability occurring in 1936 as a consequence of sciatica, is founded on the theory that, because the insured submitted a proof of disability during the month of July 1939 in which he stated that the total disability commenced on April 1st 1939, plaintiff is now estopped from contending that he was incapacitated on and after May 9th 1936, when defendant discontinued the payment of disability benefits.

There is no substance whatever in this contention for the reason that the statement in the proof of disability in July 1939 was brought about by the defendant's misinterpretation of its liability under the policy, that is, that it was responsible only for disability rendering the insured wholly incapable of performing any type of work. It is obvious that, but for the wrongful action of the defendant in stopping the monthly payments on May 9th 1936, the statement in the proof furnished in July 1939 (that total disability commenced on April 1st 1939) would not have been made.

■ And it is for the same reason, i. e., the misstatement of its liability under the disability provisions of the policy, that defendant is liable for penalties and attorneys' fees under Act No. 310 of 1910. At the time the disability payments were discontinued, the insured was informed by defendant that its action was based on the fact that he was engaged in the operation of a gas filling station. Defendant's Chairman of the Committee on Disability Benefits stated in a letter to plaintiff, dated

June 26th 1936, that "Disability is deemed to be total whenever the insured is wholly disabled by bodily injury or disease so that he is prevented thereby from engaging in any occupation whatsoever for remuneration or profit". That, of course, is not the law of this State and the defendant knew it for, on February 5th 1935, the Court of Appeal of the Second Circuit had decided otherwise in the case of Cates v. New York Life Ins. Co., 159 So. 172. Accordingly, the action of the defendant in cutting off the disability payments was not founded on just and reasonable grounds, which is essential in order for the insurer to avoid the penalties prescribed by Act No. 310 of 1910. See Stern v. New York Life Ins. Co., supra.

Plaintiff's counsel request an increase in the attorneys' fee of $750 awarded below. We think, however, that the fee is adequate for handling this litigation to final conclusion.

The judgment is affirmed.