392 So.2d 765 (1980)
Autrey J. DEROUEN & Ella R. Derouen, Plaintiffs-Appellees,
v.
DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT, OFFICE OF HIGHWAYS, Defendant-Appellant.
No. 7960.
Court of Appeal of Louisiana, Third Circuit.
December 17, 1980.
*766 John W. King, Baton Rouge, for defendant-appellant.
Antoon, Dalrymple & Beck, Robert L. Beck, Jr., Alexandria, for plaintiffs-appellees.
Before GUIDRY, STOKER, and DOUCET, JJ.
STOKER, Judge.
This is an action for personal injuries and property damages by husband and wife, Autrey J. Derouen and Ella R. Derouen. The sole defendant is the State of Louisiana, Department of Transportation and Development, hereinafter referred to as "Department". Plaintiffs were traveling at night on July 20, 1976, at about 10:00 PM on Louisiana Highway 10 when their car struck a hole in the bridge over the Calcasieu River. The accident resulted in personal injuries to both plaintiffs and property damage to the vehicle. The hole had been cut in the bridge by the Department in the course of driving new bridge piling.
The trial court found for the plaintiffs and assessed damages. The Department has appealed. In its specification of errors the Department complains of (1) the trial court's finding that the Department owed a duty to adopt a "fool proof" method of covering the hole in the bridge or (2) alternatively, failing to find that the driver of the vehicle (Mrs. Derouen) was negligent in causing the accident and in failing to find that her guest passenger (Mr. Derouen) assumed the risk of traveling on the bridge, and (3) also, alternatively, in awarding property damages in the absence of proper proof and in awarding what appellant claims are excessive personal injury damages.
In answer to the appeal, appellee, Autrey J. Derouen, seeks an increase in the amount of damages awarded to him.

FACTS
The Department was in the process of strengthening the bridge by driving piling. In order to do so the Department's employees cut holes in the bridge decking through which the pilings were driven. Mrs. Derouen's *767 vehicle encountered one of these holes which measured 14" by 14" square. At night a steel plate was bolted over the hole with a piece of bridge decking placed underneath the hole through which the bolt was run. At the time that Mrs. Derouen drove over the hole the plate covering had come loose and was several feet away from the hole.

LIABILITY
Department's Liability under LSA-C.C. art. 2317.
The trial court found the Department liable using language which might be interpreted as imposing liability without negligence. We think there is a valid basis for liability under LSA-C.C. art. 2317. The bridge was in the custody of the Department and under its control. Unquestionably it contained a defect. The Department complains that it had no notice that the bridge covering had come loose and therefore had no opportunity to repair. In this regard the Department relies on our case of Gallien v. Commercial Union Ins. Co., 353 So.2d 1127 (La.App. 3rd Cir. 1977), writ denied, 354 So.2d 1379 (La.1978). The Gallien requirement of notice and opportunity to repair which saved municipalities and public bodies from the sweeping effect of Loescher v. Parr, 324 So.2d 441 (La.1975) was rejected by the Supreme Court of Louisiana in Jones v. City of Baton Rouge, etc., 388 So.2d 737 (La.1980).
The majority opinion in the Jones case contains the following:
"Where delictual responsibility is based not on negligence but on legal fault, under article 2317, a public body's knowledge of the existence of the danger is irrelevant. Liability is a consequence of the fact of ownership and custody in itself, not of the breach of a duty."
Special Defenses.
Plaintiffs pleaded their case as a case of negligence. Defendant defended the case as one of negligence and raised the defense of alleged contributory negligence of Ella R. Derouen. Both parties have briefed the case as one of negligence. Although defendant argues in brief that Autrey J. Derouen is barred from recovery by his assumption of risk, the Department failed to set forth assumption of risk as a separate defense. We do not have to consider the effect of the alleged assumption in the context of this case inasmuch as it was not pleaded as an affirmative defense as required by LSA-C.C.P. art. 1005.
We find no merit to the claim of contributory negligence. If we consider the plea of contributory negligence to be the same as alleging the defense of victim fault under Loescher v. Parr, supra, we find on the facts that Mrs. Derouen was not at fault under the circumstances. The trial judge made no mention of contributory negligence in his reasons for judgment and we conclude that he found no facts that would sustain a finding of contributory negligence (assuming this case were considered as a negligence case). Nor do we find victim fault in the context of a case decided (as we do here) under the principle of fault without negligence.
Therefore, we affirm the trial court's finding of liability.

DAMAGES
Automobile Damages.
The trial court awarded plaintiff Autrey J. Derouen the sum of $1,000.00 as property damages. In its reasons for judgment the trial court stated: "The damage to plaintiff's vehicle was to the front end, wheels and underneath. This court finds damages in the amount of $1,000.00."
In its brief the appellant complains of the award of these damages as follows:

"The Court erred in awarding One Thousand ($1,000.00) Dollars for damages to the 1974 Mazda automobile in the absence of proof by the plaintiffs of the value of the automobile or the extent of the damages thereto. Photographs of the vehicle were not introduced into evidence to demonstrate the amount of damage suffered by the vehicle and neither was an *768 estimate from a body shop or automobile body man introduced into evidence. There was no testimony whatsoever from any qualified person as to the extent of the damage to the 1974 Mazda automobile and the costs of repairing this damage. The record is entirely devoid of proof as to damages to the automobile and the trial court arbitrarily set the amount without any basis or foundation therefore and the One Thousand ($1,000.00) Dollars award of damages should be reversed for sufficient (sic) proof to substantiate such a judgment."

The record reveals that no one, not even Mr. Derouen, ever testified as to the monetary value (or estimate) of the automobile repairs. The figure of $1,000.00 was evidently fixed by the trial court without the benefit of any evidence on this point.
On direct examination Mr. Derouen testified concerning his automobile damages. This testimony appears on page 121 through 123 of the transcript:
"Q Was there any damage done to your automobile, Mr. Derouen?
A Yes, I still have damage on it. The springs had broke loose from underneath. It looked like that frame was bent some. It blew out two tires and the rims and it kind of mashed in the radiator a little bit.
Q What happened to the rims of your automobile, Mr. Derouen?
A Oh, they was all mashed up.
Q I'm going to show you four pictures marked P-1-I'll staple them together and mark them P-1 in globo Well, I guess I'll mark them P-1, P-2, P-3, and P-4. Would you look at those pictures and tell the Court what those pictures depict? In general, what are those pictures of?
A. These are of my car. This is probably where I first hit it but it wasn't sitting that high. It's looking pretty good right there. This frame here...
Q. What are you pointing to right there?
A. This is when I first hit the car on the bridge. This rim hereThis one here in the back is all bent up.
Q Let the record reflect that you're pointing to P-3.
A That's P-3.
Q You're pointing your finger to the driver's side of the car of the right
A The left-hand side.
Q The left front and rear tires and rims?
A Yes, sir. And right over here I ought to have a dent in this bumper that I still have.
Q Was that done in the accident?
A Yes, sir.

Q P-4, right there ...
A Yeah, P-4.
Q What portion of your car is P-4 shown in?
A I got a dent right over here and this over here is still bent upbent in right underneath here where I side swiped that bridgethat concrete hump or whatever they call it. I call it a sidewalk in case somebody wants to walk over the bridge, you know, it would be all right. This here is bent up and still bent up.
Q Was that done in the automobile accident?
A Yes, sir.
Q Of July 20th?
A July 20th. Okay. This is P-1.
Q That's P-2.
A Okay. P-2. When I hit the bridge, all of this underneath was torn up. As you can see, this brake line in [sic] hanging down. All the springs underneath, they was just ripped off when I hit this plate.
Q Was that as a result of the accident?
A Yes, sir. And underneath here, which is not showing ...
Q Okay. Let's not talk about anything that's not shown in the pictures right now.
A Okay. This is P-1, yeah. It might be the front tire.
*769 Q You don't know which tire that is? Is that one of the tires off of your car?
A That's one of the tires off of my automobile.

Q Was that damage ...
MR. KING: Your Honor, at this point I would object to him putting testimony of the photographs and the wheel until after some foundation has been laid (inaudible).
MR. BECK: I think that all is required is that those photographs are true and accurately depict what they purport to depict and that's sufficient foundation for him to identify them and testify about them.
MR. KING: No identification has ever been made of those photographs.
MR. BECK: Your Honor, it's (inaudible).
THE COURT: Well, let's go ahead. I mean, it's customary. Just find out about the pictures. He wants to know who took the pictures and all of that. Go ahead.
MR. BECK: Does Your Honor want me to lay that foundation?
THE COURT: Well, he's objected to it so I'll sustain his objection.
Q Mr. DeRouen, were you present when those pictures were taken?
A No, I wasn't."
Counsel did not pursue the matter further and the photographs were never offered in evidence. They are not a part of the record.
On cross examination, as recorded on pages 134 and 135 of the transcript, Mr. Derouen further testified concerning his automobile damages:
"BY MR. KING:
Q Mr. DeRouen, did you get your automobile fixed pursuant to your insurance company paying you to have your car fixed after this accident?
A I don't follow you.
Q Did you get your automobile repaired after this accident?
A I got it fixed at, I'd say.
Q Are you driving this automobile?
A No, sir, I'm not.
Q Have you sold this automobile?
A No, I got it parked. I have it parked. Since this wreck, it just don't want to stay together. I've done wore two sets of tires out with the little bit of driving that I have and it's just something out of line and it's just not drivable, that's all there is to it.
Q Does the engine run on it?
A No, it's not running. It's lost compression for some reason since that wreck.
Q But you did drive it after the accident?
A Yes, I drove it after the accident."
In our opinion the answers given are confusing but we conclude that Mr. Derouen did not have his automobile repaired after the accident. The record contains no evidence that he was paid for his damages by a collision insurance carrier. Evidently, the vehicle was driven for some period of time after the accident. We do not doubt that plaintiff Derouen sustained considerable damage to his vehicle. In our opinion, however, the trial court committed error in attempting to fix the damages without evidence of the monetary amount of the repairs. We are mindful of the liberal rule which holds that if it is evident that a plaintiff has suffered damages the trial court is given broad discretion to fix damages even in the absence of certain evidence of the amount of the damages. Jordan v. Travelers Insurance Company, 257 La. 995, 245 So.2d 151 (La.1971). Nevertheless, we believe that the rule does not apply as fully in automobile damage cases where the items of damage are peculiarly within the knowledge of specialists. We are also aware of the rule which permits a claimant to testify concerning his own damages, but we believe that the rule has more validity where the loss is peculiarly within the knowledge or experience of the claimant as for example in the case of lost wages. Coleman v. Victor, 326 So.2d 344 (La.1976).
*770 In this case before us, as noted above, the plaintiff did not testify as to the value or cost of repairs, but only to what in his opinion had occurred.
Doubtless the pictures plaintiff referred to would graphically show certain damage. We doubt, however, that the extent of damage depicted would establish such assertions as a bent frame, a damaged brake line, or misalignment of wheels, nor would the cost of repair of body damage which might be depicted be indicated by a photograph. Therefore, in the absence of any testimony or corroboration of the cost of repair, we do not deem it appropriate to order a remand of the case for the purpose of admitting the photographs.[1]
As shown above we are faced in this case with a situation in which neither the plaintiffs nor anyone else testified as to the cost of repair of the plaintiffs' vehicle. It was not in fact repaired so there is no repair estimate. Although Mr. Derouen may be correct in his description of the type of damage the vehicle sustained, he was not shown to have any expertise in determining certain types of damages, such as a bent frame for example, which generally requires a modicum of expertise to determine. The vehicle in question was a 1974 4-door Mazda and the date of the damage was July 20, 1976. Therefore, the vehicle was two years old. We do not regard this as a case in which it was appropriate for the trial court to supply an estimate of damages on its own.
It is well settled that where there is a legal right to recovery but the damages cannot be exactly estimated, the courts have reasonable discretion to assess the damages based upon all the facts and circumstances of the case. Jordan v. Travelers Insurance Company, supra. Here the damages could have been determined by qualified repairmen with reasonable certainty. There was no necessity for the trial court to make an estimate of damages susceptible of reasonable determination by experts. With respect to the automobile damages, the plaintiffs simply failed to carry their burden of proof.
Plaintiffs have relied on Burns v. Dominque, 354 So.2d 763 (La.App. 4th Cir. 1978), writ denied, 356 So.2d 1010 (La.1978) as justifying the trial court's assessment of the damages on the basis of Mr. Derouen's testimony. The case is distinguishable.
In Burns v. Dominque, supra, the plaintiff was allowed to make an offer of proof of a repair estimate prepared by a firm which ceased doing business prior to trial. The person who prepared the estimate was subpoenaed but could not be served. The trial court also allowed plaintiff to offer testimony to substantiate the content of the estimate and to introduce photographs of the damage. Based on this state of the record the trial court made an award of $1,000.00 for automobile damage. The reviewing court of appeal found no error. While we distinguish this case, we do not thereby wish to imply that we would follow the decision in a case presenting similar facts and circumstances.
The Supreme Court case of Coleman v. Victor, supra, is distinguishable on the grounds clearly indicated by the Supreme Court itself. Plaintiff Coleman's automobile damages were fixed at $800.00 on the basis of her own self-serving and hearsay testimony. She testified she obtained a repair *771 estimate of $800.00 but did not have the vehicle repaired as she did not have the money. The testimony was not elicited on direct examination. It was brought out by defense counsel on cross examination. On this basis the Supreme Court held the evidence as to the repair estimate to be admissible even though it was self-serving and hearsay.
Inasmuch as plaintiffs in this case before us failed to carry their burden of proof in establishing their automobile damages, we reverse and set aside the trial court's award of $1,000.00 for property damages.
Personal Injury Damages.
The trial court made awards for pain, suffering and disability to plaintiffs in the amount of $5,000.00 for Mr. Derouen and $6,000.00 for Mrs. Derouen. Defendant contends that these awards are excessive and argues as error the trial court's award of damages in these amounts. Appellant has not pointed out the basis on which it contends the awards are excessive. Plaintiff-appellee Autrey J. Derouen asks in his answer to the appeal that the award in his favor be increased to $50,000.00.
Mrs. Derouen sustained a cervical strain. Based on the evidence and the testimony of the medical experts we cannot say that the award made by the trial court was not within its considerable discretion. We will not disturb this award. LSA-C.C. art. 1934(3); Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1977) and Reck v. Stevens, 373 So.2d 498 (La.1979).
Mr. Derouen was operating a service station at the time of the accident which he leased on a month to month basis. On the day following the accident Mr. Derouen's back hurt but he apparently experienced no exceptional pain. He continued to work for two and a half weeks and then took off two months. The service station was given up for reasons that appear to be based on personnel problems and the failure of the station to be economically successful. Mr. Derouen then worked for approximately one year as a painter's helper at Fort Polk. At the time of trial he had been working for Penrod Drilling Company for about fifteen months as a pit hand which involves physical labor. Mr. Derouen testified he could do "that work all right, but a lot of bending over just bothers my back."
The only physician Mr. Derouen ever consulted was Dr. T. E. Banks, an orthopedic specialist. He saw Dr. Banks one time only and that was on August 17, 1976. (The accident occurred on July 20, 1976.) He has never returned to see Dr. Banks because he stated Dr. Banks led him to believe there was nothing he could do for him. Dr. Banks made positive physical findings and stated Mr. Derouen had evidence of a lumbosacral strain with sciatic irritation on the left. Other findings suggested possible nerve root irritation, and the question of herniation of a lumbosacral disc could not be ruled out. These latter possibilities were never confirmed. Mr. Derouen's assigning the accident of July 20, 1976, as the cause of all of his complaints and symptoms is complicated by the fact that Mr. Derouen had a previous accident in 1973. Derouen testified that he became asymptomatic from the first accident after about a year, and Dr. Banks was of the opinion that the July 20, 1976, accident could have caused a reinjury of a previous injury. However, Dr. Banks testified that a three-fourths difference in thighs resulting from atrophy would probably have pre-dated the last accident.
Given the history related to him by Mr. Derouen, Dr. Banks thought the 1976 accident was a contributing factor in causing the sciatic irritation and lumbosacral sprain. Dr. Banks prescribed medication and recommended a small back support if Mr. Derouen wanted to return to work. The medication consisted of Naprosyn, an anti-inflammatory agent. No medication for pain was prescribed. Dr. Banks stated he advised Mr. Derouen to return if his condition worsened. Mr. Derouen never returned to see Dr. Banks and has seen no other physician. He does use a back support.
From the foregoing review we are of the opinion that Mr. Derouen has proved no loss of earnings or loss of earning capacity. His disability does not prevent him from working *772 in fairly strenuous work. We are unable to say that the trial court abused its great discretion in awarding Mr. Derouen only $5,000.00 for his personal injuries. Certainly the award is not so out of line as to justify appellate modification under the guidelines laid down in Coco v. Winston Industries, Inc., supra, and Reck v. Stevens, supra.
For the foregoing reasons we affirm the trial court's awards to Mr. and Mrs. Derouen for their personal injuries. We affirm the trial court's judgment in all respects with the exception of the award of $1,000.00 as property damages to plaintiffs' automobile which award we reverse and set aside.
The costs of this appeal are assessed to defendant-appellant.
AFFIRMED IN PART; REVERSED IN PART.
NOTES
[1] It may be that the trial court and counsel misunderstood one another with reference to the photographs. The well-established rule as to the admissibility of photographs is that it need only be shown that a photograph depicts correctly what it purports to depict. Launey v. Traders and General Insurance Company, 169 So.2d 757 (La.App. 3rd Cir. 1964); Macaluso v. Populis, 339 So.2d 386 (La.App. 1st Cir. 1976). Therefore, counsel was correct in urging this test. When the trial judge sustained defendant's objection, he appears to have suggested a more restrictive test. In any event, the question of admission of the pictures was not pursued when plaintiff testified he was not present when the pictures were taken, and they were not offered under an offer of proof. The error on the part of the trial judge in appearing to suggest that a proper foundation required testimony by the photographer who took the photographs was, under the circumstances of this case, not sufficiently serious to require a remand.