416 So.2d 272 (1982)
James ALLEMAN, Plaintiff-Appellee,
v.
STATE of Louisiana, DEPARTMENT OF HIGHWAYS, Defendant-Appellant.
No. 8806.
Court of Appeal of Louisiana, Third Circuit.
May 26, 1982.
Rehearing Denied July 21, 1982.
*273 Jerry L. Finley, Baton Rouge, for defendant-appellant.
John A. Rogers, Jeanerette, for plaintiff-appellee.
Mouton, Roy, Carmouche, Bivens & Kraft, John Bivens, Lafayette, for intervenor-appellee.
Before DOMENGEAUX, CUTRER and SWIFT, JJ.
CUTRER, Judge.
This is an appeal by the State of Louisiana, through the Department of Highways from a trial court judgment awarding James Alleman damages for injuries he received when the vehicle, in which he was a passenger, overturned after striking a pothole on Louisiana Highway 82 in Iberia Parish, Louisiana.
On the date of the accident, November 20, 1977, plaintiff, James Alleman (Alleman), was employed by Loomis International, Inc. (Loomis), as an "operator" whose duties were to pressure test drilling pipe used in oil exploration. That Sunday morning he met his co-employee, Andrew Zanelotti (Zanelotti), at the company yard in New Iberia. Each man then drove a two-ton flatbed truck to Intracoastal City to pick up some testing equipment which had been used offshore. The truck that Alleman was driving sustained a flat tire after it arrived at the loading dock. The equipment was loaded upon the truck driven by Zanelotti and Alleman rode with Zanelotti on the return trip to the New Iberia yard.
The return route followed the same route taken in the early morning trip. Around 10:00 A.M., while heading north on Highway 82, Zanelotti proceeded around a curve approaching a bridge when he hit "something" in the road causing the front end of his truck to jump up off the surface of the road. The truck went out of control. Despite his efforts to regain control of the truck, it overturned just after he completed traversing the bridge. Alleman was thrown from the vehicle upon impact, suffering severe injuries to his face and head. Zanelotti suffered much less severe injuries in the accident.
*274 Alleman filed suit against the State of Louisiana through the Department of Highways (Department) to recover damages for injuries he sustained in the accident due to the Department's negligence in failing to properly maintain the highway. The Department answered alleging Alleman was contributorily negligent, thus barring his recovery; a third party demand was made against Loomis and its employee, Zanelotti, alleging their negligence and solidary liability with the Department. Third party defendants filed a motion for summary judgment against Loomis' claim which was granted by the trial judge. No appeal having been taken from that judgment, it has become final.
American Mutual Liability Insurance Company (American), the workmen's compensation insurer of Loomis, filed a petition of intervention seeking to recover workmen's compensation benefits and medical expenses paid by it to Alleman. American also sought judgment relieving itself of any future liability for workmen's compensation benefits or medical expense and reimbursement for any that are paid.
Trial on the merits was had; the trial court rendered judgment in favor of Alleman and against the Department subject to the claims of intervenor, American. The Department appealed this adverse judgment. No appeal or answer was filed by Alleman.
The Department alleges several errors committed by the trial court in deciding this case. Upon our review, we find the significant issues to be:
(1) Was the trial court manifestly erroneous in finding the Department liable to Alleman for his injuries;
(2) Did American sufficiently prove its entitlement to reimbursement for medical expenses paid by it to Alleman;
(3) Was the award of damages to Alleman excessive; and
(4) Did the trial court err in failing to allow contribution by Loomis and Zanelotti.

LIABILITY
(A) Existence of a Defect
In determining liability it is necessary to first establish whether some cause in fact of the injury, of which Alleman complains, existed. In other words, did the trial court commit manifest error in finding the existence of a pothole and then concluding it to be the cause in fact of the accident?
The trial court, after considering all the evidence and testimony, concluded that the preponderance of the evidence proved the existence of a pothole and that it was the cause in fact of Alleman's injuries. The determination by the trial court was a factual one and should not be reversed on appeal absent manifest error. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); Canter v. Koehring Company, 283 So.2d 716 (La.1973). The method of review by the appellate courts in civil cases was clarified by Arceneaux, supra, stating:

"As an aid to the exercise of the appellate function of review of facts in civil cases, we attempted to explain, in Canter v. Koehring, supra, without great detail, the appropriate standard. We said that `even though the appellate court may feel that its own evaluations and inferences are as reasonable,' it should not disturb reasonable findings of the trial court when there is conflict in the testimony. We prefaced this observation: `When there is evidence before the trier of fact which, upon its reasonable evaluation of credibility, furnishes a reasonable factual basis for the trial court's finding, on review the appellate court should not disturb this factual finding in the absence of manifest error.' 283 So.2d 716, 724 (Emphasis added)."

On deposition and at trial Alleman maintained that Zanelotti negotiated the curve going approximately 40 to 45 miles per hour. He stated that he, as a habit, notices the speedometer and that he had looked at it prior to entering the curve. After negotiating the curve, the truck approached a bridge. Alleman testified that he noticed a pothole in the road when they were 30 to 40 *275 feet from it but there was insufficient time to warn Zanelotti before impact. The front end of the truck jumped up off the roadway, went out of control and overturned. Alleman described the pothole as being about 3 ft. × 3 ft. and 4 to 6 inches deep. There was some conflict between Alleman's deposition testimony and that at trial (whether the pothole was closer to the highway's centerline or the shoulder of the north-bound lane and whether the left front or right front tire hit it); however, the variations are insignificant to the resolution of the case.
Zanelotti, the driver of the truck, stated that after negotiating the curve he approached the bridge. He noticed a truck approaching him encroaching in his traffic lane on the bridge. He was paying more attention to the truck than to the roadway. He slowed down and suddenly he felt a jolt. The front end of the truck went up into the air, it swerved to the left after returning to the road surface and flipped. Zanelotti stated he slowed from 50 to 55 miles per hour to 40 to 45 miles per hour upon entering the curve. He did not remember crossing the bridge.
The Department tried to prove the non-existence of the pothole and that the accident was solely due to the negligence of Zanelotti. The State called Sergeant Tommy Reeves of the Louisiana State Police who investigated the accident. The trooper stated that Zanelotti and Alleman had been taken to the hospital by the time he arrived. He didn't remember if he interviewed these parties at a later time. The trooper stated that he felt that excessive weight and "a little too much speed" caused the accident. He found no skid marks at the scene. He had no way of knowing the weight of the testing equipment. The trooper stated that he retraced the path of the truck from its resting place to the store (south of the bridge) and found no defects in the road surface. He relied on his report. He had investigated the accident two years previously. He stated that his report reflected no defects in the road surface and stated that if there would have been any he would have noted same.
John Bergeron, the operator of the store near the accident for the past twelve years, stated that he had not noticed a pothole on the roadway in front of his store. He stated that if had seen one he would have reported it to the Department. Mr. Leo (Neil) Bergeron, the maintenance superintendent for the Department in that area stated that periodic checks (every two weeks, minimum) are made by traveling the roads and visually checking for potholes and other defects. He stated that he had no report of a pothole on Highway 82; however, he stated that until the pothole became 18 inches in diameter and 2 to 3 inches deep it would not be considered dangerous and it would not be immediately covered.
In regard to the pothole, photographs were introduced showing a large pothole south of the bridge as well as testimony as to its existence by Alleman's brother, Ronald Alleman, and Cornelius Slaughter. The Department objected to the introduction of the photographs as they were taken on February 4, 1978, after the accident in November 1977, as not showing the condition of the road at the time of the accident. Ronald Alleman stated that approximately one month after the accident he and Alleman viewed the size of the hole to be 3 ft. × 3 ft. and 4 to 6 inches deep filled with shells and gravel. Slaughter made the same observation (he measured the hole finding it to be 3 ft. 2 in. × 3 ft. and 6 inches deep) on February 4, 1978 and took pictures of the pothole. Alleman stated that the pictures showed the pothole they hit on the day of the accident except that it had been filled with shell by the time the photographs were taken.
As to the admissibility of the photographs, this court in DeRouen v. Dept. of Trans. & Development, 392 So.2d 765, footnote 1, p. 770, (La.App. 3rd Cir. 1980), stated:
"... The well-established rule as to the admissibility of photographs is that it need only be shown that a photograph depicts correctly what it purports to depict...." (Citations omitted.) *276 See also, Messex v. Louisiana Department of Highways, 302 So.2d 40 (La.App. 3rd Cir. 1974). The photographs were admissible and subject to such weight as the trial court may accord them considering the circumstances under which they were taken.[1] In addition to the photographs the trial court had before it the testimony of witnesses. The trial court recognized the close factual nature of the determination (the existence of the pothole), but determined that the testimony (even though much was conflicting), "conclude [d] it is more probable than not that the pothole did exist November 20, 1977." The trial court gave great weight to Alleman's testimony as he was in the best position to see the pothole. We cannot say that this finding and conclusion by the trial court is manifestly erroneous or clearly wrong. Arceneaux, supra; Canter, supra.
(B) Strict Liability: LSA-C.C. Article 2317
The trial court held the Department liable under the theory of "strict liability." LSA-C.C. art. 2317. On appeal, the State does not take issue with the applicability of art. 2317. We shall apply art. 2317 to this case. Our Supreme Court, in one of its most recent pronouncements regarding strict liability, Jones v. City of Baton Rouge, etc., 388 So.2d 737, 739 (La.1980), stated:
"Because the responsibility for preventing the unreasonable risk of injury to others is unconditional, the injured party seeking damages under article 2317 need not prove that any particular act or omission on the part of the defendant caused his injuries. He must only prove that the thing which caused the damage was in the care or custody of the defendant, that the thing had a vice or defectthat is, that it occasioned an unreasonable risk of injury to anotherand that his injury was caused by the defect. ..." Id. at 737.
Further, in regard to the liability of a public body for its actions or omissions, the court stated:
"... Where delictual responsibility is based not on negligence but on legal fault, under article 2317, a public body's knowledge of the existence of the danger is irrelevant. Liability is a consequence of the fact of ownership and custody in itself, not of the breach of duty."
This court, in a very analogous case to the one at bar, held the Department liable under the "strict liability" provisions of art. 2317. DeRouen v. Dept. of Trans. & Development, supra. In that case, the Department was driving new support piling on Louisiana Highway 10 bridge over the Calcasieu River. In order to do so, a 14 in. × 14 in. hole was cut through the bridge deck. Once work ceased for the day, a metal plate was bolted down over the hole; however, it somehow came loose exposing the hole into which the wheel of plaintiff's car fell while traversing the bridge. We affirmed the liability of the Department under art. 2317. The Department's claim of contributory negligence on the part of the driver was denied.
In a very close factual situation, the court in Scott v. State Dept. of Trans., Etc., 392 So.2d 482 (La.App. 1st Cir. 1980), writ den., 396 So.2d 921 (La.1981), held the Department liable under art. 2317 for damages suffered by the plaintiff when she struck a "pothole" at the end of a bridge. She could not avoid striking it either by stopping or by changing lanes (due to traffic). The court found that all of the elements of strict liability were met; the State had custody of the highway; the highway was defective and that the defect caused plaintiff's injuries. No fault of the victim, fault of any third person or irresistible force was proven to exculpate the Department.
*277 The same conclusion was reached in Foggan v. La. Dept. of Trans. and Dev., 402 So.2d 154 (La.App. 1st Cir. 1981), which allowed a motorcycle driver to recover damages sustained when he hit a hole in a state highway. In setting out the principles of legal fault (art. 2317), the court stated:
"Neither knowledge of the defect or any particular act or omission by defendant are prerequisites to a finding of liability.... Plaintiff need only prove that (1) the thing which caused his injury was within the defendant's care and custody; (2) the thing had a vice or defect, i.e., that it occasioned an unreasonable risk of injury; and (3) his injury was caused by the defect.... Once these elements are established, defendant can escape liability only by showing that plaintiff's injury was caused by plaintiff's own fault, by the fault of a third party, or by an irresistible force. ..." Id. at 156. (Citations omitted.)
From a review of the facts in our case, we conclude that the trial court was not clearly wrong in its conclusion that a "pothole" did exist in the highway creating an unreasonable risk of harm to plaintiff, the highway was under the custody of the Department which was responsible for its maintenance and that Alleman's injuries were caused by the dangerous condition which existed (pothole). No evidence of any fault on the part of the victim, a third party or any irresistible force was present that would exculpate the Department from liability. We find the pothole to be a defect (unreasonably hazardous condition) which was the cause in fact of Alleman's injuries. There being no defenses to this liability proven by the Department, it is therefore, liable for damages caused by its legal fault under LSA-C.C. art. 2317.
(C) Intervention: Medical Expenses
The Department urges that intervenor, American, did not sufficiently prove that the payments, made by it, were for claims arising out of the accident. We disagree. At the beginning of the trial the parties stipulated as follows:
"... And, further that for and on behalf of the injuries which Mr. Alleman complains of with regard to the accident of 20 November, 1977, American Mutual paid to or for in behalf of Mr. Alleman to include the doctors, hospital, etc. the sum of six thousand, six hundred thirty-four dollars and forty-three cents ($6,634.43). And, that is the extent of our intervention. ..."
Counsel for the Department agreed to the stipulation. No further proof of these expenditures is required.
(D) Quantum
The Department contends that the award was excessive. As a result of the accident, Alleman suffered severe head and facial injuries. The medical testimony is replete with details of the severity of Alleman's injuries. By summary, Alleman suffered a fractured skull, broken jaw (right mandibular fracture); frontal sinus fracture (right upper jaw, maxilla), which also was in relation to occipital fractures of the lower orbital (the part of the cheek bone below the eyes which forms the lower portion of the eye socket); marked edema (swelling) of upper and lower eyelids on both sides, with scattered bruises under eyelid tissue on both sides; small hemorrhage on conjunctival (white lining of eyeball) on right eye, apparent lateral fracture of the C-7 vertebrae which appeared to be stable requiring no treatment. An emergency tracheotomy was performed to aid Alleman's breathing. To remove the resulting scar will necessitate plastic surgery with total costs estimated to be $700.00.
To set the mandibular fracture required an open reduction (surgical incisions into the skin to remove fragments of bone). Also, dental arch bars were wired to Alleman's teeth and pulled together by rubber bands. His jaws remained immobile for six weeks precluding ingesting anything but liquids and normal use was not restored for a few weeks once the braces were removed. The sinuses were packed to give support to the occipital and maxilla fractures. As a result of the sinus fracture, Alleman has lost all sense of smell and one third of his *278 sense of taste. He also has asymmetrical infra orbital rims; left rim is slightly higher than the right. Scars remain where incissions were made.
Further, as a result of the trauma to Alleman's face, head and mouth, he has suffered damage to his teeth. After the fractures were set and had healed, corrective dental work was performed to repair damaged teeth. This work required the removal of five teeth, a porcelain jacket crown for one, silver amalgam fillings for five teeth, and a partial composite filling for one other. Alleman made eleven visits to Dr. Schexnayder's office and received two bridges to replace those teeth which were removed.
From the testimony of the various attending physicians, Alleman suffered much pain from his injuries received in the accident. The trial court awarded Alleman $52,500.00 "as compensation for his injuries, disability, future damages, mental anguish, pain and suffering." An award of $9,000.00 was made for loss of wages, making a total of $62,500.00 subject to intervenor's claim of $13,000.00 paid in workmen's compensation benefits.
The Supreme Court, in Coco v. Winston Industries, Inc., 341 So.2d 332, 334 (La. 1976), elucidated several principles by which examinations of damage awards are to be guided, opining:
"`Unless the record demonstrates that the trial court abused the "much discretion" provided for in fixing damages (C.C.1934), the appellate court should not disturb the award.... The question is not whether a different award might have been more appropriate, but whether the award of the trial court can be reasonably supported by the evidence and justifiable inferences from the evidence before it. That such evidence might also support a greater (or smaller) award will not justify a change in the amount by the appellate court....

"`A reviewing court might well disagree with the amount of the award fixed by the jury, but it is not entitled to substitute its opinion for that of the trier of fact. ..."
These guidelines have been followed: Reck v. Stevens, 373 So.2d 498 (La.1979); Bantin v. Dept. of Transp. & Development, 411 So.2d 65 (La.App. 3rd Cir. 1982).
We find no abuse of discretion in the trial court's award of damages.
Alleman, in brief, asks this court to increase the trial court's award from $62,500.00 to $165,700.80. We are unable to do so. In order to have a judgment increased, the appellee must either appeal the judgment or answer the appeal. Alleman, the appellee, did not appeal; therefore, his remedy is limited by LSA-C.C.P. art. 2133 which requires an answer to be filed "stating the relief demanded, not later than fifteen days after the return day or the lodging of the record whichever is later." No answer was filed and we do not construe his brief to incorporate an answer, but, if so, it would not have been filed within the allowable time permitted by LSA-C.C.P. art. 2133. This claim is denied.
(E) Contribution of Zanelotti; His Employer, Loomis
The Department urges that it is entitled to have the judgment reduced by one-half due to its third party demand against Loomis and Zanelotti. The Department contends that Zanelotti's negligence contributed to the cause of the accident. We disagree. Loomis and Zanelotti filed a motion for, and obtained a summary judgment dismissing the Department's third party claim against them. The judgment was signed April 11, 1977, and no appeal was perfected. That judgment has become final and cannot be considered on this appeal.
For the foregoing reasons, the judgment of the trial court is affirmed. Costs of the trial court and of this appeal shall be paid by appellant, State of Louisiana, Department *279 of Highways, in the amount of $1,111.48.
AFFIRMED.[2]
DOMENGEAUX, J., concurs and assigns brief reasons.

APPENDIX

NUMBER 8806
JAMES ALLEMAN
v.
STATE OF LOUISIANA, DEPARTMENT OF HIGHWAYS
In this case, we have affirmed the trial court's conclusion of liability of the Department on the basis of LSA-C.C. art. 2317 as interpreted in Jones v. City of Baton Rouge, supra. If we had approached the liability problem from the standpoint of LSA-C.C. art. 2315, this decision would have been a clear reversal. The evidence does not show that the Department had any knowledge, either constructive or actual, of the existence of the pothole prior to the accident. The net effect of this decision is to extinguish the longstanding rule which held that it must be shown that the Department had knowledge, actual or constructive, before it can be held liable.
The case of Jones v. City of Baton Rouge, supra, was handed down September 3, 1980. The case of Sinitiere v. Lavergne, 391 So.2d 821 (La.1980), was rendered on November 10, 1980, after Jones. In Sinitiere, the court decided liability on the basis of art. 2315, clearly finding knowledge of the defective condition by the Department before the accident and a failure to repair same. If we were to decide this case following Sinitiere, it would be a clear reversal. By deciding it based upon the earlier case of Jones (which makes no requirement of prior knowledge by the Department), we affirm the liability of the Department.
We have come to the conclusion that art. 2317 (Jones) is applicable in this case, but we do so with some reservations. We are asking ourselves the question of whether the longstanding rule of prior knowledge of a defect by a public body, has been deleted from our jurisprudence dealing with defective conditions in objects under the control of a public body. We are answering this question in the affirmative as a review of the very recent jurisprudence is progressing in that direction; consequently dictating such a result. We are unable to fully convince ourselves, however, that we have unequivocably arrived at that point in view of the potential problems this ruling would create for all public bodies who have custody of highwayshence, our reservations.
DOMENGEAUX, Judge, concurring.
I agree with the majority opinion and the appendix attached. I concur simply to suggest that this case may be a good one for the Supreme Court to grant a writ and clear up the apprehensions and uncertainties involved in the overall subject of strict liability as it pertains to public bodies.
NOTES
[1] Four other pictures were identified and introduced into evidence which were taken in March 1981. These pictures were identified by Alleman as showing the general scene of the accident; the grocery store with potholes in front of the store; a house next door to the grocery store with potholes in front of same. The potholes were not on highway property and were not relevant to this case. The remainder of the scenes, however, showed the structures and scenes referred to in the testimony concerning the occurrence of the accident. These pictures, while quite remote in time, were admissible for whatever value the trial judge may have wanted to apply to them.
[2] See appendix.