452 So.2d 1182 (1984)
Peggy Sue Walker LINCECUM
v.
MISSOURI PACIFIC RAILROAD COMPANY, et al.
No. 83 CA 0635.
Court of Appeal of Louisiana, First Circuit.
May 30, 1984.
Rehearing Denied June 29, 1984.
Writ Denied October 26, 1984.
*1185 Leonard Fuhrer and George A. Flournoy, Fuhrer & Flournoy, Alexandria, Robert L. Freeman, Freeman, Pendley & Canova, Ltd., Plaquemine, for Lincecum.
Boris F. Navratil and Murphy J. Foster, III, Breazeale, Sachse & Wilson, Baton Rouge, for Missouri Pacific R. Co.
Houston C. Gascon, III, Dist. Atty., Plaquemine, for Iberville Parish Police Jury.
Howard B. Gist, III, Gist, Methvin, Hughes & Musterman, Alexandria, for Employer's Ins. of Wausau.
Before LOTTINGER, EDWARDS and ALFORD, JJ.
LOTTINGER, Judge.
This action involves a train-truck collision in Iberville Parish, resulting in the death of the truck driver, Robert Lincecum. The collision occurred at the crossing where Sidney Road intersects with tracks maintained *1186 by the Missouri Pacific Railroad. At the time of the accident the deceased was employed by the Sam Broussard Trucking Company.
Suit is brought by Lincecum's widow, Peggy, to recover damages resulting from Lincecum's death for herself and a minor child of the marriage to Lincecum. The defendants named in the suit include the State of Louisiana Department of Transportation and Development; Iberville Parish Police Jury; Missouri Pacific Railroad Company; and three employees of the Missouri Pacific Railroad Company: Chris J. Blythewood, Melvin Frazier and F.R. Sims.
The Broussard Trucking Company's insurer, Employer's Insurance of Wausau, intervened in the suit to recover workmen's compensation benefits paid to Lincecum's widow and child. Employer's Insurance dismissed its intervention upon reaching agreement with the plaintiffs that they would receive payment from any judgment awarded to the plaintiffs.
The Department of Transportation requested and received a summary judgment and was dismissed from the suit. The remaining defendants were tried by a jury, with the exception of the case against the Police Jury which was decided by the judge alone. The Police Jury was granted a dismissal and the trial judge also granted a motion for directed verdict in favor of the three Missouri Pacific employees.
The case against the Missouri Pacific Railroad was submitted to the jury on the alleged "dangerous" condition of the crossing. The jury awarded damages in the amount of $225,000 to the widow and $225,000 to the child. From that judgment the plaintiff and defendant appeal. In this appeal defendant asserts four (4) assignments of error, and plaintiff asserts two (2) assignments of error.

DEFENDANT'S ASSIGNMENT OF ERROR NO. 1
The defendant argues that the trial judge erred in failing to direct a verdict in its favor, La.Code Civ.P. Art. 1810, or to grant its motion for a judgment N.O.V., La.Code Civ.P. art. 1811.
Defendant asserts that there was enough evidence in the case so as not to permit reasonable minds to differ, that an ample view was afforded for the decedent to see an approaching train, and that the accident was due solely to decedent's negligence.
A trial judge has much discretion in determining whether or not to grant a motion for a directed verdict. La.Code Civ.P. art. 1810; Broussard v. Missouri Pacific Railroad Company, 376 So.2d 532 (La.App. 3rd Cir.1979). In deciding whether or not to grant a motion for directed verdict and judgment not withstanding the verdict the court should consider all of the evidence in the light most favorable to the party opposing the motions. A court should not grant the motions unless the facts and inferences point so strongly and overwhelmingly in favor of one party that reasonable minds could not arrive at a contrary conclusion. Roberts v. St. Bernard Parish School Board, 427 So.2d 676 (La. App. 4th Cir.1983).
After a thorough review of all the facts and evidence considered in the light most favorable to the plaintiff, we find that this assignment of error is without merit. There was testimony from all the witnesses, who lived in the vicinity of the tracks on Sidney Road, to the effect that the crossing was blind to a northbound motorist. The decedent was traveling in a northerly direction when the accident occurred. There was testimony that high grass and brush over six feet tall had not been cut prior to the accident. The witnesses also described prior accidents and near-misses which they had been involved in at that crossing.
Defendant relies on the case of McFarland v. Illinois Central Railroad Company, 122 So.2d 845 (La.App. 1st Cir.1960), affirmed 241 La. 15, 127 So.2d 183 (La. 1961). In McFarland the court reasoned that the question of negligence of a defendant is a question of fact to be determined in light of the circumstances of each case. The court went on to review the dangerous *1187 trap doctrine as set forth in 44 Am.Jur. Railroads § 507.
The principle that a crossing is unusually dangerous embraces a situation where the dangerous condition results from obstructions to the view which prevents a traveler from seeing an approaching train until he is dangerously close to the track. This rule requires the railroad company to exercise caution commensurate with the situation whether it be by reducing the speed of the train, or by increasing warnings or otherwise. The rule of care applies regardless if the obstructions to the view are legitimate and necessary in conducting the business of the railroad, and is thought to be fair because it is always within the power of the railroad company to remove the source of danger which was created by its own inattention.
Defendant argues that the McFarland doctrine applies only in those crossings which are unusually dangerous because obstructions on or near the railroad right-ofway prevent a motorist from seeing an approaching train until he is on or dangerously near the track. Defendant believes that the issue of the nature of the crossing itself should not have gone to the jury because the evidence in this case does not admit that the crossing falls within the meaning of the McFarland doctrine.
We are of the opinion that the preponderance of the evidence in this case was sufficient to show there existed at the time of the accident grass, brush, trees and shrubs such as would block the view of a motorist to such an extent that he would virtually have to place himself in peril in order to get a clear view down the track.
Defendant contends that the witnesses' testimony is overcome by the fact that photographs were put into evidence by the defendant which accurately reflect the height of the grass and brush at the time of the accident. Defendant asserts that when such clear and unambiguous physical evidence is presented it cannot be supplanted by oral testimony.
The photographs that defendant presented at trial showing the layout of the railroad tracks in relationship to Sidney Road were admissible, subject to such weight the jury might accord them even though some of the pictures were taken 10 days after the accident occurred. Alleman v. State, Department of Highways, 416 So.2d 272 (La.App. 3rd Cir.1982).
The jury in this instance placed lesser weight upon the photographs than the defendant felt they should have under the case law. At trial witnesses who lived in the area and traveled Sidney Road daily had trouble recognizing the crossing depicted in the photographs as the crossing on Sidney Road. Several of the witnesses could not recognize the crossing until defense counsel pointed out familiar landmarks leading to the crossing. Several witnesses testified that the grass along the railroad right-of-way had been cut shortly after the accident stating that the grass had been much higher on the day of the accident.
Defendant places special emphasis on a photograph taken by an insurance adjuster which depicts the accident scene a few hours after the accident. In this photograph the view is toward the crossing from the direction in which the train would have been travelling. When the photograph was taken an ambulance parked along the roadside was clearly in view. Defendant argues that this clear and convincing photograph should not be overcome by oral testimony. We disagree.
The insurance adjuster initially responded that the photograph of the crossing adequately and fairly represented the scene which it depicted. Subsequently he stated that he was confused about the positioning in the photograph and could not be sure whether the picture accurately depicted the scene. The adjuster was also questioned concerning the distance down the track he could see when he crossed the track. The adjuster responded that he could not be sure because he was primarily concerned with the view of the crossing from the railroad crew's vantage.
*1188 In light of the foregoing we cannot say the jury was clearly wrong in attributing less weight to the photographs than the defendant feels should have been accorded them.

DEFENDANT'S ASSIGNMENT OF ERROR NO. 2
In this assignment the defendant asserts that the trial court erred: (1) in permitting lay witnesses to give testimony concerning prior accidents occurring at the crossing; (2) in permitting lay witnesses to give their opinions that they considered the crossing dangerous; (3) in permitting the plaintiff to introduce evidence of post-accident improvements at the crossing; (4) in permitting the plaintiff to introduce into evidence the Iberville Parish School Board file concerning its attempts to gain installation of electric signals at the crossing; and (5) in not permitting an insurance adjuster to be cross-examined by counsel for the railroad.

PRIOR ACCIDENTS
Testimony concerning prior accidents is admissible for the limited purpose of showing that the defendant had notice of defects or physical conditions which are dangerous. Cassanova v. Paramount-Richards Theatres, Inc., et al., 204 La. 813, 16 So.2d 444 (La.1944); Keen v. Pel State Oil Company, Inc., 395 So.2d 866 (La.App. 2nd Cir.1981). The use of prior accidents or injuries are only admissible where the prior accidents or injuries are closely related in circumstances to the injury or hazard at issue. Miller v. Employers Mutual Liability Insurance Company of Wisconsin, 349 So.2d 1353 (La.App. 2nd Cir.1977).
There was no showing by the plaintiff that the prior accidents in question were so closely related in circumstance to the injury or hazard at issue as to be admissible for the purpose of showing notice. Nor may the defendant be heard to object to the use of prior accident evidence when he cross-examined Mr. Angelloz as to any knowledge of prior schoolbus accidents, thereby, opening the door to the evidence after the trial court had previously ruled not to allow prior accidents into evidence.
Even though the evidence was improperly admitted, the duty of this court is to review the facts without reference to such evidence. Miller supra. We are of the opinion that the jury probably believed the plaintiff's testimony where there was a conflict. The error in admitting the evidence was not of such serious prejudicial nature as to require a reversal.

DANGEROUS CROSSING
Defendant argues that lay testimony that a crossing is "dangerous" falls within the prohibition against opinion testimony, and that its prejudicial effect for outweighs its value.
Lay witnesses have been allowed to give opinions as to the speed a vehicle was traveling upon a showing that they drove vehicles and observed the speeds of vehicles. Fidelity and Casualty Company of New York v. Aetna Life and Casualty Company, 244 So.2d 255 (La.App. 3rd Cir. 1971). Lay witnesses have also been allowed to give their opinions to establish a person's insanity by testifying to the specific facts in which his opinion is based. Bell v. Acacia Mutual Life Ins. Co., 204 La. 1005, 16 So.2d 821 (La.1944).
Similarly, a lay witness should be permitted to opine the "dangerous" condition of a crossing provided they can show that they are familiar with the crossing in question, and cite specific facts upon which their opinion is supported. The credibility of this opinion testimony should go to the weight rather than to its admissibility. Fidelity and Casualty Company of New York, supra.
In this instance the witnesses who testified on the condition of the crossing were all very familiar with the crossing. Each traversed the crossing frequently and observed the condition of the crossing over an extended period of time. Also each witness stated specific facts on which they based their opinions. In light of this, we *1189 determine that the lay opinion of the crossing's condition was properly admitted.

POST ACCIDENT IMPROVEMENTS
Defendant urges this court to rule that precautionary measures or repairs taken after an accident should not be admissible to show fault.
After reviewing the record we are of the opinion that there was sufficient evidence presented to the jury to decide that the crossing was "dangerous" without considering any post-accident measures which were taken by the railroad company. This assignment of error is without merit.

SCHOOL BOARD FILE
Defendant complains that the introduction of the files of the school board evidencing letters, resolutions, and communications requesting that flashing signals be installed at the Sidney Road crossing induced the jury to think that the railroad was statutorily mandated to perform such a task.
The courts have held that the files of public bodies are admissible on the issue of notice of the dangerous condition of railroads. Hebert v. Missouri Pacific Railroad Company, 366 So.2d 608 (La.App. 3rd Cir.1979), writ denied, 369 So.2d 153 and 155 (La.1979). This assignment of error is without merit.

CROSS EXAMINATION OF ADJUSTER
Defendant asserts that the trial judge's erroneous ruling disallowing defense counsel to cross-examine the witness William Brown in order to impeach him was so prejudicial against him that a reversal is mandated.
Mr. William Brown was called as a witness by defendant to elicit testimony as to the distance one could see down the railroad track at the Sidney Road crossing. Mr. Brown is an adjuster employed by Employer's Insurance of Wausau which was the workmen's compensation insurer for Broussard Trucking Company. Mr. Brown had been dispatched to investigate the accident scene on behalf of Employer's. Upon arriving at the scene approximately three hours after the crash Mr. Brown took photographs of the area leading to the track from a southward direction on Sidney Road. Brown also walked approximately 150 yards down the track in the direction the train had come from and snapped several more pictures.
When defense counsel asked Mr. Brown how far he could see down the track from the crossing, the witness answered that he could not be sure. Defense counsel then proceeded to cross-examine the witness in an attempt to impeach him on the basis of an earlier inconsistent statement made while deposing the witness. Plaintiff's counsel objected to the impeachment on the basis that the witness was merely stating that he did not remember. The trial court sustained the objection. In later questioning by defense counsel, Mr. Brown stated that he had gotten confused about the positioning when he had taken the picture.
Upon reviewing the deposition of Mr. Brown, it is clear that he did not understand the questions being asked him. The witness stated several times that he did not understand the gist of counsel's questions, and stated several times that he was confused.
A party may impeach his own witness if he can show he is surprised or the witness is hostile. La.R.S. 15:487. To show surprise it is not enough to demonstrate that the witness did not testify as expected. The party calling the witness must show that the witness testified upon some material matter against him in favor of the other side. State v. Paster, 373 So.2d 170 (La.1979). It is our opinion that the witness did not testify upon some material matter in favor of the other side. Instead, we believe that the witness was genuinely confused and did not grasp the question asked by defense counsel during the deposition.
A party may impeach its own witness without a showing of surprise if he can prove that the witness is hostile. State *1190 v. Willis, 241 La. 796, 131 So.2d 792 (1961). A showing of hostility of a witness depends upon a showing that the witness' interest is on the opposite side to such an extent that he is unlikely to give a true statement concerning the transaction. State v. Welch, 368 So.2d 965 (La.1979).
The most counsel could show for the witness' hostility is the fact that he was a claims adjuster employed by the workmen's compensation carrier of the trucking company which owned the vehicle involved in the accident. This in and of itself is not sufficient to show the hostility of a witness. In order to show hostility counsel must place into evidence more specific facts clearly establishing that the witness is unlikely to give a true account.
It is arguable that the defense counsel did not establish either surprise or hostility. Under these circumstances we cannot hold that the trial judge's ruling was erroneous. This assignment is without merit.

DEFENDANT'S ASSIGNMENT OF ERROR NO. 3
Defendant objects to the following portions of the jury instructions:
"If you determine that the crossing was a dangerous one, and if you find from the evidence that Missouri Pacific took no action to improve this situation, that is, to lessen the dangers, or failed to change its operating procedures to minimize the risks in this area or failed to travel at a speed commensurate with the conditions in existence, then you should find Missouri Pacific negligent.
"To run a train at a high rate of speed, without precautionary signals, or with signals manifestly insufficient to meet the requirements of a proper warning approach where trainmen have reason to believe that there were persons in exposed position on the track, as over unguarded crossings in a populous district of a city, or where the public are wont to cross on the track with such frequency in numbers as to be known to those in charge of the train they will be held to a knowledge of the probable consequences of maintaining great speed without warnings."
The adequacy of jury instruction by a trial court must be determined in the light of jury instructions as a whole. Brown v. White, 405 So.2d 555 (La.App. 4th Cir.1981); Higgins v. Johnson, 349 So.2d 918 (La.App. 1st Cir.1977). The standard of appellate review is that the mere discovery of an error in the trial judge's instructions does not itself justify the appellate court conducting the equivalent of a trial de novo, without first measuring the gravity or degree of error and considering the instructions as a whole and the circumstances of the case. Brown supra.
Taking the jury instructions as a whole we find that they were a correct statement of the law. The defendant railroad company may have been found liable upon several basis: failing to change the operating procedures where there was adequate notice that the crossing was dangerous; failing to keep the grass and shrubs cut on the right-of-way; and failing to install signals at crossings where a motorist would have to place himself in a dangerous position near the track in order to get a view of an oncoming train. These are proper questions for the jury to decide. The charges were correct statements of existing law and were not confusing to the jury. This assignment of error is without merit.

DEFENDANT'S ASSIGNMENT OF ERROR NO. 4
Defendant asserts that the judge failed to instruct the jury to answer favorably special interrogatories relating to negligence of the three Missouri Pacific employees.
We see little sense in posing special questions to the jury relating to the negligence of the three Missouri Pacific employees when the judge earlier granted a directed verdict in their favor. This would only serve to confuse the jury on possible grounds for imposing liability on the Missouri Pacific Railroad.
*1191 After viewing the jury instructions as a whole, any prejudicial effect on the outcome of the trial was minimal, and does not warrant a reversal.

PLAINTIFF'S ASSIGNMENT OF ERROR NO. 1
Plaintiff argues that the trial judge erred in granting a directed verdict in favor of the Police Jury.
The trial court has great discretion in granting a directed verdict to a party in a lawsuit. A review of the total record does not reveal any indication that the trial judge's decision was an abuse of discretion.

PLAINTIFF'S ASSIGNMENT OF ERROR NO. 2
In this assignment plaintiff complains that the trial court erred in refusing to give a jury charge dealing with defendant's liability where an unreasonable risk of harm is present under the application of La.Civ.C. art. 2317. Under La.Code Civ.P. art. 1793 each party may file written requests that the court instruct the jury on the law as set forth in the requests. The trial court must give all requested instructions which are material and relevant to the litigation. Reeves v. Gulf States Utilities Co., 312 So.2d 118 (La.App. 1st Cir.1975), on remand 327 So.2d 671 (La.App. 1st Cir.1976). The judge need not use the exact language submitted by the party, but the instructor must adequately reflect the law on the issues presented, Gonzales v. Xerox Corporation, 307 So.2d 153 (La. App. 1 Cir.1974), nor must a judge give requested special charges where they were included in the general charges. Morales v. Toye Bros. Yellow Cab Co., 246 So.2d 52 (La.App. 4th Cir.1971), writ refused, 258 La. 772, 247 So.2d 867 (1971).
The trial court did not err in refusing to grant plaintiff's special jury charge. The trial court essentially discussed the requested special charge within the general jury instructions, although the exact language submitted by plaintiff's counsel was not used. Therefore, this assignment of error is without merit.
Therefore for the above and foregoing reasons, the judgment of the trial court is affirmed at the cost of Missouri Pacific Railroad Company.
AFFIRMED.